**Morris A. WEINER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A.00–1297.**

United States District Court, S.D. Texas, Houston Division.

Nov. 20, 2002.

Thomas E Redding, Redding & Associates, Houston, TX, for Morris A Weiner, plaintiff.

Michael D Powell, Dept of Justice, Tax Division, David B Coffin, Dept of Justice, Tax Division, Dallas, TX, for United States of America, defendant.

## AMENDED MEMORANDUM OPINION

ATLAS, District Judge.

Plaintiff Morris Weiner seeks a refund of federal income taxes and interest for the tax years 1984, 1985, and 1986. This case is before the Court on the parties' motions for summary judgment as to Weiner's 1984 tax liability arising from his investment in the Travertine Flame Associates partnership,[1] as well as the parties' summary judgment motions as to Weiner's 1985 tax liability arising from his investments in two partnerships, Emperor Seedless–85 ("Emperor Seedless) and Indio Date Associates ("Indio Date").[2] Also before the

---

1. *See* Plaintiff's Motion for Partial Summary Judgment Based on Statute of Limitations for 1984 and Supporting Brief ("Weiner's 1984 Motion") [Doc. # 21] and United States' Cross–Motion and Supporting Brief for Partial Summary Judgment and Response in Opposition to Plaintiff's Motion for Partial Summary Judgment Based on Statute of Limitations for 1984 ("IRS's 1984 Cross–Motion") [Doc. # 27]. *See also* Plaintiff's Reply to the United States' Response in Opposition to Plaintiff's 1984 Motion ("Weiner's 1984 Reply") [Doc. # 39]; Plaintiff's Response in Opposition to the United States' 1984 Cross–Motion ("Weiner's 1984 Response") [Doc.

# 44]; and Reply on United States' 1984 Cross–Motion ("IRS's Reply") [Doc. # 46].

2. *See* Plaintiff's Motion for Partial Summary Judgment Regarding 1985 Statute of Limitations Claim ("Weiner's 1985 Motion") [Doc. # 19] and United States' Cross–Motion and Supporting Brief for Partial Summary Judgment and Response in Opposition to Plaintiff's Motion for Partial Summary Judgment Regarding 1985 Statute of Limitations Claim ("IRS's 1985 Cross–Motion") [Doc. # 29]. *See also* Plaintiff's Response to United States' 1985 Cross–Motion [Doc. # 40]; Plaintiff's Reply to United State's Response in Opposi-

Court are Weiner's and the IRS's summary judgment motions in regard to penalty interest assessed by the IRS under 26 U.S.C. § 6621(c).[3] Finally, the IRS has moved for summary judgment on Weiner's claim for abatement of interest pursuant to 26 U.S.C. § 6404.[4] These motions have been fully briefed and are ripe for determination. Having carefully considered the parties' briefs, oral argument, all matters of record, and applicable legal authorities, the Court concludes that Weiner's 1984 Motion and Weiner's 1985 Motion should be **denied**, the IRS's 1984 Cross–Motion should be **granted**, and the IRS's 1985 Cross–Motion should be **denied**. The Court further concludes that Weiner's § 6621 Motion should be **denied**, the IRS's § 6621 Motion should be **denied**, and the IRS's § 6404 Motion should be **granted**.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

### A. *Travertine Flame Associates: Tax Year 1984*

During tax year 1984, Weiner was a limited partner in a California limited partnership called Travertine Flame Associates ("TFA"). TFA was formed to acquire and develop land in southern California to grow grapes and for other farming activi-

ties. American Agri–Corp. (AMCOR) was Managing Agent of TFA. In 1984, the general partners of TFA were Fred H. Behrens, C.P.A., Chairman, President and director of AMCOR, George L. Schreiber, Vice Chairman, Senior Vice President, and director of AMCOR, and Robert A. Wright, Senior Vice President and director of AMCOR. Joseph O. Voyer, a CPA, was Treasurer and Controller of AMCOR. Neither AMCOR nor Voyer was identified as a general partner in the TFA Limited Partnership Agreement or the Private Placement Memorandum used to solicit limited partners for TFA.[5]

TFA timely filed a Partnership Return of Income for the 1984 tax year ("1984 return"). The 1984 return was signed on January 30, 1985 by "Joseph Voyer, Treasurer." Weiner timely filed his individual return for 1984 and paid his tax liability related to his partnership interest in TFA based on the 1984 return.

In December 1985, AMCOR became a partner of TFA by purchasing a .5% general partnership interest. At about that time, TFA filed an Amendment to Certificate of Limited Partnership with the California Secretary of State listing AMCOR as one of its general partners.

---

tion to Plaintiff's 1985 Motion [Doc. # 33]; Reply on United States' 1985 Cross–Motion [Doc. # 47]; Plaintiff's Supplemental Brief [Doc. # 56]; Plaintiff's Supplement to Supplemental Brief [Doc. # 58]; and United States' Supplemental Reply Brief on Dispositive Motions ("IRS's Supplemental Reply Brief") [Doc. # 54].

**3.** *See* Plaintiff's Motion for Partial Summary Judgment with Respect to his § 6621(c) Related Claims ("Weiner's § 6621 Motion") [Doc. # 22]. *See also* The United States' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment with Respect to his § 6621(c) Claims [Doc. # 26]; Plaintiff's Reply to United States' Opposition [Doc. # 32]; and United States' Response to Plaintiff's Motion for Protective Order and United States'

Motion for Partial Summary Judgment Based on Settlement Agreement ("IRS's § 6621 Motion") [Doc. # 48].

**4.** *See* United States' Motion for Partial Dismissal of Plaintiff's Complaint ("IRS's § 6404 Motion") [Doc. # 16]. *See also* Plaintiff's Response to United States' Motion for Partial Dismissal of Plaintiff's Claims [Doc. # 20]; and the United States' Reply to Plaintiff's Response to United States' Motion for Partial Dismissal of Plaintiff's Claims [Doc. # 24].

**5.** AMCOR, for a management fee, was responsible for managing all day-to-day activities of TFA, including negotiating and executing contracts and tax planning and reporting. AMCOR also was the managing agent for at least thirty-five other entities.

The IRS began a criminal investigation of AMCOR and the general partners in 1988 or 1989. The IRS raided AMCOR's offices and confiscated partnership records in March 1989. The criminal investigation concluded without indictment in 1993.

On April 10, 1991, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for TFA for the tax year 1984. The FPAA set out the IRS's proposed adjustments to the expenses and deductions reported on the partnership returns.

### B. *Emperor Seedless and Indio Date: Tax Year 1985*

During tax year 1985, Weiner invested as a partner in California limited partnerships known as Emperor Seedless and Indio Date, which purported to engage in a similar business as TFA. Behrens, Schreiber, and Wright were the general partners of Emperor Seedless and Indio Date. Emperor Seedless and Indio Date filed timely partnership returns for the 1985 tax year ("1985 returns"). Neither the Emperor Seedless nor the Indio Date 1985 return designated a Tax Matters Partner ("TMP"). The IRS contends, and Weiner denies, that in September, 1988, Emperor Seedless and Indio Date properly designated Schreiber as their TMP, and Schreiber then executed a valid extension of time for the IRS to issue an FPAA relating to the 1985 returns.

Weiner timely filed his personal income tax returns for 1985 and paid his share of taxes related to Emperor Seedless and Indio Date in accordance with the partnerships' 1985 returns.

On April 10, 1991, the IRS issued FPAAs setting out the IRS's proposed adjustments to the expenses and deductions reported on the partnership returns for Emperor Seedless and Indio Date for the tax year 1985.

### C. *Tax Court Proceedings, Weiner's Settlements and Initiation of This Action*

In July 1991, partners from TFA, Emperor Seedless, and Indio Date filed Petitions in Tax Court challenging the adjustments in the FPAAs ("Tax Court Cases"). Each Tax Court Case asserted that the statute of limitations barred the FPAA adjustments. In July 1999, the then TMP, Behrens, intervened in the Tax Court Cases. In December 1999, Behrens signed a Stipulation To Be Bound ("Stipulation") in each Tax Court Case agreeing that "the outcome of the statute of limitations issue present in this Partnership Case will be determined in a manner consistent with the Court's findings of fact and law on the statute of limitations issue present" in *Agri–Cal Venture Assoc. v. Comm'r of Internal Revenue*, 80 T.C.M. (CCH) 295 (2000) (the *"Agri–Cal* case"), which concerned several other similarly situated partnerships, including partnerships known as Agri–Venture Associates ("AVA"), and Agri–Venture Fund ("AVF"). *See, e.g.,* Exhibit 8 to United States' 1985 Cross–Motion, ¶ 6. On August 28, 2000, the Tax Court issued a detailed and comprehensive opinion in the *Agri–Cal* case, holding the IRS's FPAA for tax year 1984 was not time-barred because the partnership return filed by AVA was not a valid return and, accordingly, did not trigger the statute of limitations under § 6229(a) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 6229(a). *Agri–Cal,* 80 T.C.M. (CCH) at 303. The Tax Court also held that the FPAAs for tax year 1985 were not time-barred because the partnerships had extended the time for the IRS to issue FPAAs. *Id.*

Meanwhile, in late 1996, the IRS suggested a proposed settlement to resolve Weiner's portion of his tax liabilities by sending him a Form 870–P(AD) for each of

the three partnerships in which Weiner had invested. In March 1997, while the Tax Court Cases were pending, Weiner executed and returned the Forms, thereby formally proposing the settlements to the IRS. The IRS signed each Form 870–P(AD), and accepted Weiner's settlement proposal for his tax liability related to TFA for the 1984 tax year and related to Emperor Seedless and Indio Date for the 1985 tax year.

The IRS contends that a Summary of the AMCOR Appeals Settlement Offer ("SAASO") was attached to each Form 870–P(AD) it sent to Weiner and that the SAASO makes it clear that the settlements included Weiner's agreement to the assessment of interest pursuant to IRC § 6621. Weiner denies receiving the SAASO.

Weiner paid the tax and interest assessments in October 1997. In January 1998, Weiner filed a claim with the IRS seeking a refund of taxes. The IRS denied Weiner's claim based on the Form 870–P(AD) settlements.

Weiner filed the current action in this Court in April 2000, asserting in part that any assessment against him for 1984 and 1985 are barred by the statute of limitations. Weiner also seeks a refund of interest assessed pursuant to IRC § 6621 on the grounds that his settlements with the IRS contain no statement that his underpayment of taxes was attributable to a tax motivated transaction. Weiner also seeks an abatement of interest pursuant to IRC § 6404 on the grounds that any delay in his payment of a deficiency for the 1984 and 1985 tax years was attributable to an unreasonable delay by the IRS in making the assessments.

As noted above, the Tax Court decided the *Agri–Cal* case in August, 2000 in favor

of the IRS. On July 19, 2001, in accordance with the Stipulation to be Bound, the Tax Court issued decisions rejecting the statute of limitations defenses of TFA, Emperor Seedless, and Indio Date.

## II. *STATUTORY FRAMEWORK UNDER "TEFRA"*

Before addressing the specific issues raised by the parties' various motions, a brief explanation of the statutory framework governing the assessment of partnership taxes is in order.

Partnerships are not directly subject to income tax. Partners are liable to the tax in their individual capacities, on a *pro rata* basis corresponding to their ownership interest in the partnership. 26 U.S.C. § 701; *Chimblo v. Comm'r of Internal Revenue*, 177 F.3d 119, 121 (2d Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1159, 145 L.Ed.2d 1071 (2000); *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir.1998). Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221—6233 (enacted by Pub.L. No. 97–248, § 402, 96 Stat. 324 (1982)), to achieve consistent treatment of all partners in a partnership and to alleviate the administrative burden of determining partnership-related tax issues at the individual partner level. 26 U.S.C. § 6221; *Alexander v. United States*, 44 F.3d 328, 330 (5th Cir.1995); *Chimblo*, 177 F.3d at 121; *Kaplan*, 133 F.3d at 471.

Partnerships are required to file informational returns reflecting the partners' distributive shares of income, gains, deductions, and credits. *Kaplan*, 133 F.3d at 471. The IRS must provide notification to individual partners of any adjustments it believes are necessary as to "partnership items" reported in the partnership return.[6]

---

**6.** A partner may request administrative adjustments of the partnership return, 26 U.S.C. § 6227, from which judicial review by the taxpayer is permitted, *id.* § 6228.

This notification is through a Notice of Final Partnership Administrative Adjustment, or FPAA. *Id.*

Under TEFRA, the treatment of all partnership items must be determined at the partnership level. 26 U.S.C. § 6221; *Chimblo,* 177 F.3d at 125; *Kaplan,* 133 F.3d at 473 ("TEFRA requires that all challenges to adjustments of partnership items be made in a single, unified agency proceeding; indeed, this is the key component of TEFRA that yields the desired benefits of economy and consistency."). A partnership item is "any item required to be taken into account for the partnership's tax year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3).[7] The Treasury Regulations more specifically define partnership items as "items of income, gain, loss, deduction or credit of the partnership." Treas. Reg. § 301.6231(a)(3). Nonpartnership items are all other items. 26 U.S.C. § 6231(a)(4).

▪ TEFRA requires partnerships to designate a "tax matters partner" ("TMP") to act as a liaison between the IRS and the partnership in any tax-related proceedings. 26 U.S.C. § 6231(a)(7)(A); *Addington v. Comm'r of Internal Revenue,* 205 F.3d 54, 60 (2d Cir.2000). The TMP is a fiduciary to the partnership and the individual partners. *Transpac Drilling Venture 1982–12 v. Comm'r of Internal Revenue,* 147 F.3d 221, 225 (2d Cir.1998).

The IRS has three years from the date a partnership return is due to be filed in which to issue an FPAA. 26 U.S.C. § 6229(a). The three-year period may be extended by agreement between the IRS and the TMP, whose agreement binds all partners. *Id.* §§ 6229(b), 6229(d). It is this three year limitations period that is in issue in this case.

For ninety days following issuance of an FPAA, the TMP has the exclusive right to file a petition for readjustment of the partnership items in Tax Court, the Court of Federal Claims, or a United States District Court. *Id.* § 6226(a). Thereafter, non-TMP partners have 60 days in which to file a petition for readjustment. *Id.* § 6226(b)(1).

Partners whose tax liability may be affected by the outcome of litigation of partnership items have the opportunity to participate in the administrative proceeding. 26 U.S.C. §§ 6224(a), 6226(c); *Chimblo,* 177 F.3d at 121. The IRS may assess tax liability on individual partners only after the partnership tax determination has been made. Any such assessment must be made within one year from the date any court's decision on the partnership items becomes final. 26 U.S.C. § 6229(d). A taxpayer may contest the notice of deficiency by paying the assessment and then filing a refund action in a United States District Court. However, with limited exceptions not applicable here, "[n]o action may be brought [in District Court] for a refund attributable to partnership items." *Id.* § 7422(h).

Partnership items convert to nonpartnership items through a settlement agreement between the IRS and the individual partner with respect to such items. *Id.* § 6231(b)(1)(C). If an individual partner settles his partnership tax liability with the IRS before the partnership proceedings are completed, that partner may no longer participate in the partner level litigation,

---

**7.** Subtitle A is the subtitle of the Internal Revenue Code, 26 U.S.C. § 1 *et seq.,* setting

forth items subject to federal income taxes.

since the individual partner does not have an interest in that litigation. *Id.* § 6228(a)(4). That settling partner is bound under the terms of the settlement agreement with the IRS. *Id.* § 6224(c)(1). If a partnership item is converted to a nonpartnership item pursuant to a settlement, the jurisdictional bar of § 7422(h) no longer applies. *Alexander*, 44 F.3d at 331; *Slovacek v. United States*, 40 Fed. Cl. 828, 830 (1998).

## III. *ANALYSIS*

### A. *Summary Judgment Standards*

Both Weiner and the IRS have moved for summary judgment on the statute of limitations issues for the 1984 and 1985 tax years and on Weiner's claim for a refund of interest assessed under § 6621(c) for the tax years 1984, 1985, and 1986. The United States Supreme Court has held that a motion for summary judgment is properly granted unless there is evidence "on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict .…" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wheeler v. Miller*, 168 F.3d 241, 247 (5th Cir.1999). Rule 56 is an integral part of the Federal Rules of Civil Procedure, recognizing a party's right to demonstrate that certain claims have no factual or legal basis and to have those unsupported claims disposed of prior to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant shows that there are no genuine issues of material fact, the burden is on the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996). The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 215 (5th Cir.1998); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc* ).

The Court "must review all of the evidence in the record, but make no credibility determinations or weigh any evidence." *Peel & Company, Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir.2001) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). "Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991). Rumors, speculation, hearsay and other information which would be excluded at trial cannot be considered in ruling on a motion for summary judgment. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995). In the absence of proof, the Court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds on denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little*, 37 F.3d at 1075.

### B. *Subject Matter Jurisdiction*

Neither party contests this Court's subject matter jurisdiction over the FPAA limitations issue. Nevertheless, the Court has a continuing obligation to ensure that subject matter jurisdiction in fact exists over the issues it decides. *Howery v. Allstate Ins. Co. .*, 243 F.3d 912, 919 (5th Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). Although the facts Weiner alleges in support of his stat-

ute of limitations claims differ for the tax years 1984 and 1985, the jurisdictional analysis is the same for each. The Court reluctantly concludes that it has jurisdiction to determine the statute of limitations issues presented by Weiner in this case, despite the apparent inconsistency of this holding with the logic and structure generally of TEFRA. This result is driven by a strict construction of TEFRA's statutory language, which other courts have not explicitly addressed, and the governing Treasury Regulations.

Generally, this Court has jurisdiction over a taxpayer's refund action under 26 U.S.C. §§ 1340, 1346(a)(1) and 7422(a).[8] *See Alexander,* 44 F.3d at 330–31. Under TEFRA, however, the Court does not have subject-matter jurisdiction over a refund attributable to partnership items. 26 U.S.C. § 7422(h).

Weiner agrees with these basic propositions but contends that this Court has jurisdiction to consider, and must consider, the issue of the timeliness of the FPAA as to TFA and his other partnerships.[9]

Weiner essentially contends that the § 6229(a) three-year limitations period for issuance of a FPAA is a nonpartnership item under TEFRA that must be litigated in a partner's refund proceeding.[10] The IRS provides no substantive counter-arguments, despite having been requested to do so in a parallel lawsuit.[11]

Several courts have held that a statute of limitations defense under TEFRA pertaining to the timeliness of the FPAA concerns a partnership item and must be raised at the partnership level. *Chimblo,* 177 F.3d at 125; *Kaplan,* 133 F.3d at 473; *Williams v. United States,* 165 F.3d 30 (6th Cir.1998) (Table), 1998 WL 537579, at *3 ("It is well established that [FPAA] statute of limitations challenges are considered challenges to a partnership item."); *Clark v. United States,* 68 F.Supp.2d 1333, 1344 (N.D.Ga.1999); *Thomas v. United States,* 967 F.Supp. 505, 506 (N.D.Ga. 1997); *Barnes v. United States,* 1997 WL 732594, at *3 (M.D.Fla.1997), *aff'd* 158 F.3d 587 (11th Cir.1998) (holding that the issue of whether a partnership had extend-

---

**8.** Section 7422(a) provides:

> **No suit prior to filing claim for refund.—** No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.
> 26 U.S.C. § 7422(a).

**9.** Under TEFRA, the FPAA tolls the three-year statute of limitations for assessing any deficiency set by 26 U.S.C. § 6229(a) if the FPAA is issued within the three-year period established by that section. 26 U.S.C. § 6229(d). Thus, for every partnership return, there is a

fixed, statutorily defined deadline for issuance of the FPAA.

**10.** In *Kraemer v. United States,* Civil No. H–00–2948, 2002 WL 575791, Magistrate Judge Nancy Johnson, held that the District Courts lack jurisdiction over Weiner's limitations claims. Magistrate Judge Johnson relied on appellate and other authorities discussed later in this section of this Memorandum Opinion ("Opinion"). Because of the strength of Magistrate Judge Johnson's reasoning, this Court informed the parties that the memoranda of law filed at the invitation of Magistrate Judge Johnson in the *Kraemer* case would be considered by this Court because the FPAA limitations jurisdictional issue appears to be identical in these suits. *See* Order, dated February 28, 2002 [Doc. # 62]. Kraemer made several arguments in response to the *Kraemer* opinion. *See* Plaintiff's Motion for Reconsideration Regarding 1984 Statute of Limitations Jurisdictional Issue [Doc. # 46], at 2–4.

**11.** *See supra* note 10.

ed the FPAA limitations period was a partnership item under TEFRA); *Slovacek v. United States*, 36 Fed. Cl. 250, 255 (1996) ("whether a statute of limitations applicable to the partnership as a whole was waived so as to permit assessment of additional taxes against the partnership as a whole is an issue to be decided at the partnership level, since it affects all partners alike.").[12] The Court finds the reasoning of these cases persuasive, as far as it goes. Most of the opinions adopt the analysis in *Slovacek*, in which the Court of Federal Claims noted that "TEFRA distinguishes between tax determinations and items that affect the entire partnership ('partnership items') and those that depend, instead, upon the unique circumstances of a partner, or some other non-partnership-wide variable ('nonpartnership items'). For example, the question of whether a partner must pay tax on a sum she receives from the partnership upon her termination is a nonpartnership item." 36 Fed. Cl. 250, 254 (Fed.Cl.1996). The *Slovacek* court determined that the FPAA limitations issue is encompassed by the regulatory definition of "partnership item" found in Treasury Regulation § 301.6231(a)(3)–1(b), which provides that

"[t]he term 'partnership item' includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." *Id.* at 255. The court reasoned that "determining whether [the purported TMP] extended the statute of limitations might be said to affect the amount, timing, and characterization of income, etc. (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner. Conversely, a statute of limitations issue applicable only to an individual partner involves questions of fact pertinent only to that partner, *e.g.*, whether he extended the statute of limitations for his own return, *see* I.R.C. § 6229(b)(1)(A), or timely entered into a settlement agreement solely with respect to the partner's return, *see* IRC § 6229(f), or participated in preparing a fraudulent partnership return, *see* IRC § 6229(c)(1)(A)." *Id.* at 255. This reading of the interplay between § 6231(a) and Treasury Regulation § 301.6231 is consistent with TEFRA's goal of promoting consistency and reducing duplication of litigation as to issues that affect all partners in a partnership uniformly. *Id.* at 254.[13] Re-

12. Potentially pertinent here is Weiner's argument made in another context (the fairness of applying collateral estoppel) that § 6226(d) was amended in 1997, so that for tax years prior to 1997 the Tax Court lacked jurisdiction to decide the statute of limitations issue in a partnership proceeding, or at least that jurisdiction was questionable. The Court disagrees with Weiner's analysis of the amendment. First, the amendment's clarification of jurisdiction does not mean that the Tax Court previously lacked jurisdiction. Congress likely perceived an ambiguity on the issue and sought to remove any doubt about congressional intent. Second, Weiner's argument conflates statutes of limitations issues applicable only to an individual partners (such as whether the IRS's assessment of a deficiency came more than one year after his settlement), *see Treaty Pines Invest. Partnership*,

967 F.2d at 210, with the limitations governing issuance of the FPAA for an entire partnership, which is the same for all partners and seems to be a quintessential partnership matter. *See Chimblo*, 177 F.3d at 125. Moreover, the Tax Court routinely exercised jurisdiction over the partnership statute of limitations issue prior to the 1997 amendment. *See, e.g., Alexander*, 44 F.3d at 330 (the Tax Court entered judgment for certain partners based on statute of limitations). Thus, the Court concludes that the 1997 amendment clarifying the Tax Court's jurisdiction over statute of limitations issues plays no role in the jurisdictional analysis at hand.

13. This case is distinct from *Monti v. United States*, 223 F.3d 76, 82 (2d Cir.2000), and *Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed.Cir.2001), cited in the *Kraemer* Mo-

cent appellate cases have adopted this approach in interpreting the definition of "partnership item" to include the issue of whether the FPAA was timely, an item that affects the entire partnership and does not depend on the unique circumstances of the partner seeking a refund. *Chimblo,* 177 F.3d at 125; *Kaplan,* 133 F.3d at 473.

Weiner contends that these authorities are wrongly decided and should not be followed. Weiner points to various statutory provisions applicable to partner-specific statute of limitations defenses. These references are irrelevant. Weiner in the case at bar raises no partner-specific facts in support of his statute of limitations contentions. The only question here is whether the FPAAs as to his partnerships were issued more than three years after the filing of the partnership returns, and thus failed to toll the statute of limitations on assessments of deficiencies against Weiner. Under TEFRA's scheme, this FPAA limitations issue is one that affects the partnership as a whole and all the partners in the same manner; the issue does not involve partner specific facts. Under TEFRA's philosophy, the FPAA limitations issue should not be relitigated in this Court in an individual partner proceeding. *See Monti v. United States,* 223 F.3d 76, 79 (2d Cir.2000); *Chimblo,* 177 F.3d at 125; *Kaplan,* 133 F.3d at 473.

Weiner advances, however, an argument not fully addressed by *Slovacek* and its progeny. Weiner points out that "partnership item" in the IRC is a defined term. Section 6231(a)(3) defines a partnership item as "any item required to be taken into account for the partnership's taxable year *under any provision of subtitle A* to the *extent regulations prescribed by the Secretary* provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." (Emphasis added.) According to this definition, the item must also be included in subtitle A of the IRC *and* be the subject of regulations promulgated by the Secretary. The deadline for issuing a timely FPAA is contained in § 6229(a), which is located in subtitle F of the IRC (as is all of TEFRA). No Treasury Regulation specifically identifies the timeliness of an FPAA as a matter "more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). The *Slovacek* court attempted to resolve this definitional quandary by reference to Treasury Regulation § 301.6231(a)(3)–1. *Slovacek* undertook an aggressive reading of the language of that regulation. Contrary to that court's analysis that the regulation encompassed the "thumbs up, thumbs down" issue of the timeliness of the FPAA, the limitations question is not of the same ilk as matters listed in § 301.6231(a)(3)–1. That regulation gives as examples of partnership items "the partnership's method of accounting, taxable year, and inventory

tion for Reconsider. *Monti* and *Prochorenko* hold that a partner's right to request a consistent settlement under § 6224(c)(2) is not a partnership item. The Second Circuit explained:

One partner's right to settlement terms consistent with those granted to another partner is not a partnership item, because the question posed requires consideration of the relationship between one partner's situation and another's and the individual's, rather than the partnership's, communica-

tions with the IRS. The facts needed to determine whether consistent terms were offered are facts about the partner, not facts about the partnership.

*Monti,* 223 F.3d at 82 (cited in *Prochorenko,* 243 F.3d at 1363). As the Court has explained, the specific statute of limitations issue raised by Weiner does not require consideration of the relationship between one partner's situation and another's or the individual partner's communications with the IRS.

method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30." Thus, § 301.6231(a)(3)–1 was designed to cover more specific matters that affect the particulars of the tax due, and while the *Slovacek* court's analysis reaches a logical result, it is unsupported by the applicable regulations.

The *Slovacek* court also failed to confront directly the statutory limitation of IRC § 6231(a)(3) that partnership items are "any item required to be taken into account for the partnership taxable year under any provision of subtitle A [of the IRC]." The FPAA limitations provision appears only in subtitle F. Therefore, the other element of the IRC's definition of "partnership items" is not met by the *Slovacek* analysis.

 According to the plain meaning of the statutory language, an item does not become a "partnership item" simply because it affects the partnership as a whole and is more appropriately decided at the partnership level. This Court has jurisdiction over timely filed refund actions unless specifically restricted by statute. Congress has limited this Court's jurisdiction in partnership related refund actions only through IRC § 7422(h), which precludes the exercise of jurisdiction over partnership items as that term is defined by § 6231(a)(3). To the extent that Weiner's FPAA limitations claim involves a nonpartnership item, § 7422(h) does not apply and the Court has jurisdiction over the matter. The IRS has provided no pertinent counter-argument.

This result is driven also by the Fifth Circuit's admonition that courts should not attempt to compensate for poorly drafted IRC provisions and regulations. *Transco Exp. Co. v. Comm'r of Internal Revenue*, 949 F.2d 837, 840–41 (5th Cir.1992) ("This court and others have balked in the past at revision of the tax code to reach what appears to be a more sensible result.... Courts are particularly ill-equipped to overhaul complicated tax provisions whose function in the general tax scheme is often beyond their ken.") (citations omitted).

In summary, the Court is constrained to hold that it has jurisdiction to reach the FPAA limitations issues presented by Weiner despite strong appellate authorities disclaiming jurisdiction. Moreover, in light of the complexity of these issues, the uncertainty of the courts on these matters, and the inordinate delay that has already occurred since the tax years in issue, the parties' interests and judicial economy will be served by the Court reaching the merits of the parties' motions for summary judgment on Weiner's statute of limitations claims.

### C. *Effect of Weiner's Form 870–P(AD) Settlement: Analysis of Alexander*

Weiner argues that his 1997 settlement agreements, executed on Forms 870–P(AD), do not preclude him from pursuing in this Court his refund claims based on the expiration of the statute of limitations. Weiner relies on the Fifth Circuit's ruling in *Alexander*.

 General contract principles govern the interpretation of the settlement agreement. *See Alexander*, 44 F.3d at 332; *Treaty Pines Invest. Partnership v. Comm'r of Internal Revenue*, 967 F.2d 206, 211 (5th Cir.1992). Weiner's Form 870–P(AD) settlements are virtually identical to the Form 870–P that the Fifth Cir-

cuit addressed in *Alexander*. The Fifth Circuit held that Alexander's settlement did not bar his refund action claim which, like Weiner's, was based on the theory that the FPAA issued to Alexander's partnership was untimely. *Id.* The IRS has articulated no meaningful distinction between the settlement agreements in *Alexander* and the instant case. The Court concludes that the parties did not settle Weiner's statute of limitations claims by the Forms 870–P(AD).[14]

Although the Court has determined that it has jurisdiction over the FPAA limitations issue, it believes that the more logical result would require litigation of the issue in a partnership-level proceeding. In the event the court of appeals were to agree with its sister circuits and adopt the reasoning of *Slovacek*, the court of appeals would have to analyze whether a finding of lack of jurisdiction is contrary to the holding of *Alexander*. This Court concludes that nothing in *Alexander* bars this Court from deciding that it lacks jurisdiction over Weiner's claim.

Taxpayer Alexander sued the IRS for a refund of taxes that were assessed and collected after the expiration of the limitations period. *Alexander*, 44 F.3d at 329. In May 1988, the IRS sent Alexander an FPAA relating to a 1984 partnership return that resulted in increased tax liability on his individual 1984 taxes. *Id.* The IRS also invited Alexander, through a Form 870–P, to make an offer, by signing the 870–P, to enter into a binding settlement to accept the adjustments in the FPAA. *Id.* Alexander made the offer, the IRS assessed a deficiency one year later, and Alexander paid the deficiency plus interest. *Id.* at 330. One year after the payment, Alexander learned that another partner had successfully challenged the FPAA in Tax Court on the grounds that it was barred by the statute of limitations. Alexander sued the IRS in United States District Court for a refund of the deficiency he paid relating to the 1984 partnership return. *Id.*[15] The IRS did not dispute the validity of the settlement agreement. *Id.* at 331.

The Fifth Circuit held that federal district courts have jurisdiction over refund claims generally. *Id.* at 330–31 (citing 28 U.S.C. § 1346). The court of appeals identified the "critical inquiry" on jurisdiction as "whether the refund action here is attributable to partnership or nonpartnership items." *Id.* at 331 (footnotes discussing 28 U.S.C. 1346, and 26 U.S.C. §§ 6231(a)(3) and (a)(4) omitted). The

---

**14.** The IRS initially conceded that Weiner's claim was permissible under *Alexander*, but retracted that concession in its Supplemental Reply Brief. The IRS now argues that the Form 870–P(AD) signed by Weiner is similar to the settlement agreement in *Tollerson v. Commissioner of Internal Revenue Service*, 1993 WL 174884 (S.D.Tex. March 4, 1993), *aff'd*, 21 F.3d 1108 (5th Cir.1994), which was cited with approval in *Alexander* as an example of a case in which the express terms of the settlement agreement precluded the plaintiff's refund claim. *Alexander*, 44 F.3d at 333. However, the issue in *Tollerson* was whether the plaintiff's settlement agreement barred a refund action based on lack of proper notice of a deficiency assessment of penalties and interest. *Tollerson v. C.I.R.*, 1993 WL 174884, at *3–4 (S.D.Tex.1993). The court

found that by signing the Form 870–P, the Tollersons agreed, among other things, to waive notice of a deficiency. Weiner has submitted certified copies of the forms at issue in *Alexander* and *Tollerson*. The determinative language in the 870–P in *Tollerson* is not present in the Form 870–P(AD) signed by Weiner. However, the Form 870–P(AD) signed by Weiner is nearly identical to the Form 870–P issue in *Alexander*. Thus, *Tollerson* is not controlling on the issue before the Court.

**15.** The opinion does not reveal when the partnership level Tax Court proceeding was initiated, but apparently that suit was resolved in the partners' favor before Alexander filed his refund suit.

Court noted that "the purpose of Section 7422(h) is evidently to prevent an individual partner's refund action from interfering with the partnership-level determination of partnership items," and "that bar becomes unnecessary when the partnership-level proceeding has in some sense concluded." *Id.* at 331. The Court further noted that section 6231(b)(1)(C) . . . converts partnership items into nonpartnership items when the Secretary enters into a settlement agreement with the partner with respect to such items." *Id.* The Court therefore concluded that the district court had subject matter jurisdiction over Alexander's refund claim. *Id.* at 331.

The court of appeals thereafter addressed the contract issue before it, and held that the parties' settlement agreement did not resolve the limitations question. The court perceived the refund action was based "on the time-barred deficiency assessed as a result of [treatment of partnership items]." *Id.* at 332. In sum, the *Alexander* court concluded that the district court had subject-matter jurisdiction to entertain Alexander's refund action, and that Alexander was entitled to the refund he sought. *Id.* at 333.

As noted above, several courts since *Alexander* have analyzed TEFRA and concluded that the FPAA statute of limitations (26 U.S.C. § 6229(a)) is a partnership item. *E.g., Chimblo,* 177 F.3d at 125; *Kaplan,* 133 F.3d at 473. In contrast, the *Alexander* Court performed no analysis of whether the limitations issue—having been omitted from the settlement agreement—remained a partnership item.[16] The only jurisdictional question presented in *Alexander* was whether the district court had jurisdiction to determine the scope of Alexander's settlement agreement with the IRS. The IRS's challenge in *Alexander* also focused on the scope of the parties' settlement, not on the classification under TEFRA of a contested FPAA limitations issue.[17] The Fifth Circuit did not explicitly recognize that the FPAA statute of limitations constituted a partnership item. The court of appeals did not need to parse this issue because the IRS had conceded that the assessment was time-barred. Significantly, the Fifth Circuit remanded the *Alexander* case for entry of judgment in favor of Alexander, not for litigation of the statute of limitations issue. *Id.* at 333.[18]

Weiner's claim for a refund of his 1984 taxes under TEFRA raises a question not reached by *Alexander.* He and the IRS seek to litigate fully the FPAA limitations issue, as evidenced by parties' extensive briefing by the parties on the matter. Un-

---

16. The Court, although it found that "the adjustments to the partnership items are firm and binding," simply declared "that the settlement agreement does not by its terms preclude a refund action for amounts paid after the expiration of the statute of limitations on assessment" and "any assessment of a deficiency based on those adjustments was time-barred." *Alexander,* 44 F.3d at 332. The court was not presented with the precise issue here, *i.e.,* whether under TEFRA and the district court's general jurisdictional grant, the FPAA timing issue may be litigated by an individual partner in district court.

17. The Fifth Circuit admonished the IRS for its failure "to draft an agreement which by its

terms would preclude the action at issue." *Alexander,* 44 F.3d at 333. Once the Court of Appeals concluded that Alexander's settlement did not encompass the limitations issue, and recognized that the IRS made no other arguments to oppose the refund, judicial economy was served by the Court immediately resolving the entire litigation.

18. A further potential distinction is that the partners' claims in the Consolidated Tax Court Case were rejected by the Tax Court. Thus, Weiner seeks to litigate issues that others in a comparable position previously attempted unsuccessfully.

like in *Alexander*, the IRS does not concede that the limitations period expired for any of the partnerships at issue before April 10, 1991, when the FPAAs were issued. The issues presented here, therefore, were not in fact decided by *Alexander*.[19]

The result in *Alexander*, under the circumstances of that case, accords with the purpose of TEFRA, *i.e.*, consistent treatment of partnership issues. Weiner's position, in contrast, is incompatible with TEFRA's goals. There is a danger that allowing Weiner individually to pursue this FPAA limitations claim opens the door for every partner that settled using a Form 870–P(AD) to pursue the issue, giving rise to duplicative litigation and potentially inconsistent results. "Allowing individual taxpayers to raise a statute of limitations defense in multiple partner-level proceedings would undermine TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners." *Chimblo*, 177 F.3d at 125.

Barring Weiner's relitigation of the FPAA limitations issue would not be unfair. Weiner had the opportunity to pursue the limitations issue in the partnership Tax Court Cases from 1991 onward. Because he did not settle with the IRS until March 1997, he had the right to pursue the limitations issue in the Tax Court Cases until at least that time. Indeed, under the *Alexander* contract analysis, which the Court adopts, Weiner did not settle the limitations issue with the IRS in the Forms 870–P(AD), and thus he likely retained his rights as a partner to participate in the Tax Court Cases on that issue irrespective of his settlements. Weiner now wants the best of both worlds; he sought to limit his liability for the tax obligation arising from the partnerships while sitting on the sidelines of the partnership Tax Court litigation. Then, dissatisfied with the Tax Court ruling, he seeks to revisit the same issue on an individual basis. Weiner would have had plenty of time to air his limitations arguments and to participate actively in the partnership litigation, had he chosen to do so. Indeed, it was individual partners who initiated each of the Tax Court Cases. The TMP for the partnerships did not enter into the Stipulation To Be Bound until 1999, long after Weiner settled his individual liability related to the partnerships.

Nevertheless, as explained above, the Court feels compelled to address the merits of the FPAA limitations issues raised by the parties.

### D. Weiner's 1984 Statute of Limitations Claim

The IRS argues that collateral estoppel prohibits Weiner from asserting that the assessment was barred by the statute of limitations, and in the alternative, that the statute of limitations was not triggered by the 1984 return because that return was not signed by a partner as required by 26 U.S.C. § 6063. Weiner makes various detailed rejoinders to each of these arguments. Weiner contends that collateral estoppel does not apply because, among other things, the statute of limitations issue here is not identical to that in the prior Tax Court case, and the issue was not fully and fairly litigated in the Tax Court because the TMP suffered from a conflict of interest. The applicability of collateral estoppel is a close issue. Under traditional issue preclusion theory, collateral estoppel would apply. However, this is a tax case, and the more restrictive tenets applicable in the tax setting dictate that Weiner should not be precluded from litigating the

---

**19.** The holding in *Alexander* as to the district court's jurisdiction should be limited to the specific issues and circumstances before that court.

FPAA limitations on the basis of collateral estoppel because the limitations issues here have not been shown by the IRS to be in *all respects* identical to those in the *Agri–Cal* case.

### 1. Collateral Estoppel

■ The Court generally has broad discretion to determine whether collateral estoppel should be applied to preclude litigation of an issue. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir.1995); *J.M. Muniz, Inc. v. Mercantile Texas Credit Corp.*, 833 F.2d 541, 543 (5th Cir.1987). Collateral estoppel bars the relitigation of an issue of ultimate fact by the party against whom the issue has been determined by a valid and final judgment. *Hibernia Nat'l Bank v. United States*, 740 F.2d 382, 387 (5th Cir.1984). While mutuality of parties is not required, collateral estoppel can only be applied against parties who have had a prior full and fair opportunity to litigate their claims. *Hardy v. Johns–Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir.1982) (explaining *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

■ Collateral estoppel traditionally applies when three conditions are met: (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case. *Hibernia*, 740 F.2d at 387; *Next Level Communications LP v. DSC Communications Corp.*, 179 F.3d 244, 250 (5th Cir.1999). The Fifth Circuit has recognized a fourth requirement for offensive use of collateral estoppel: whether there is any special circumstance that would make it unfair to apply the doctrine. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir.1998).

■ In tax cases, the rule is more narrow. Application of collateral estoppel should be confined to situations where the matter raised in the second suit is identical in all respects to that in the prior proceeding and where there has been no change in controlling facts and applicable rules of law. *Hibernia*, 740 F.2d at 387 (citing *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948)).

■ The IRS contends that the decision in the *Agri–Cal* case, to which the TMP of TFA agreed to be bound pursuant to the Stipulation, meets each of the four factors listed above. Weiner, not unexpectedly, disagrees.

***Weiner's Full and Fair Opportunity to Participate in Agri–Cal.***—The Court must determine the threshold question whether collateral estoppel may be invoked by the IRS against Weiner to bar his refund claim even though it is undisputed that neither he nor TFA was a party to the *Agri–Cal* case. Although the TMP of TFA was also TMP of the partnerships involved in *Agri–Cal*, he was not acting in his capacity as a fiduciary to TFA or Weiner in the *Agri–Cal* litigation. Thus, if collateral estoppel is to bar Weiner's claim as to his involvement in TFA, it must be by virtue of the TFA Tax Court Case.

■ On July 19, 2001, the Tax Court in the TFA case entered an agreed decision pursuant to the parties' settlement, which was based on the TMP's Stipulation that the statute of limitations issue in the TFA case would be determined in a manner consistent with the decision in *Agri–Cal*. Collateral estoppel generally does not preclude the relitigation of issues resolved through a consent judgment because such judgments lack a judicial determination of issues. *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1272–73 (5th Cir.1986); *see Dotson v. United States*, 87 F.3d 682, 692 (5th Cir.1996) (Smith, J. concurring in part and dissenting in part)

(noting party could not assert collateral estoppel where prior court had not actually and necessarily decided the relevant issue before settlement). Because the statute of limitations issue was not actually litigated in the TFA Tax Court Case, the IRS must establish a nexus between Weiner and the *Agri–Cal* case in order for that case to be the source of collateral estoppel here.

The IRS seeks to provide the necessary nexus by relying on the Stipulation To Be Bound signed on behalf of TFA. That Stipulation was an agreement by the TMP of TFA to determine the statute of limitations issue in the TFA case "in a manner consistent with the Court's findings of fact and law on the statute of limitations issues present" in the *Agri–Cal* litigation. Weiner counters that the Stipulation should not be binding because the TMP had a conflict of interest and the Stipulation was entered into in 1999, years after Weiner settled with the IRS, when he no longer had the right to participate in the TFA or *Agri–Cal* Tax Court Cases.

Even though the Court holds that the FPAA limitations issue is a nonpartnership item, the Stipulation entered into in the partnership proceedings nevertheless may provide a sufficient nexus between Weiner and the *Agri–Cal* case to meet the threshold requirement for application of collateral estoppel. There are strong arguments to support such a result. Weiner had notice of and an opportunity to participate in the TFA Tax Court Case. Weiner has not

shown that he was in a materially different position from the other partners or the partnership itself on the FPAA limitations issue in 1999 when TFA's TMP entered into the Stipulation.[20] Weiner's arguments that the TMP had a conflict of interest in 1999 when he entered into the Stipulation for TFA are unsubstantiated in this record.[21] Nevertheless, the Court declines to definitively decide the issue on this limited record. Rather, the Court assumes without deciding that Weiner was in privity with a party, namely, the TMP of TFA, in the prior litigation.[22]

The IRS still must meet its burden to establish that the traditional four elements of collateral estoppel are met in this case.

***Are the Issues Identical?***—The IRS contends that the Stipulation amounts to a concession by the TMP that the statute of limitations issues raised in the TFA Tax Court Case and the *Agri–Cal* case were identical, and that those issues are identical with the issues raised here. As Weiner points out, considerations other than the identity of the issues, such as economics and strategy, certainly could have played a part in the TMP's decision to enter the Stipulation in the TFA litigation. However, these concerns do not address the question here, *i.e.*, whether the FPAA limitations issue in *Agri–Cal* are identical to those in this case. The Court need not discern the subjective intent of the TMP. Rather, the Stipulation's language must be

---

**20.** Weiner elected to settle his claim with the IRS. He had the choice to participate in the Tax Court Case but chose not to. His position that the settlement distinguishes him from other in the partnership on this basis does not serve to eliminate his posture as a partner in privity with the TMP.

**21.** Although the exact dates of the investigation are not clear from the record, the criminal investigation concluded several years before 1999.

**22.** If the Court were to hold that the FPAA limitations issue raised by Weiner is a partnership item, the Court would also hold that the Stipulation was binding on Weiner. If the FPAA limitation issue were a partnership item, then the item would not convert to a nonpartnership item when Weiner entered his settlement with the IRS, because the settlement did not cover the limitations issue. There would be no basis on which to hold that Weiner would not be bound by the actions of the TMP regarding that limitations issue.

the focus. The Stipulation provides that the limitations issue for TFA would be determined "in a manner consistent with" the rulings in *Agri–Cal* . The Stipulation does not dictate that the TFA litigation will be resolved by the *Agri–Cal* result *per se.* The Stipulation itself does not prove that the issues are identical.

 To determine if collateral estoppel applies, the Court must look carefully at the facts actually proven in support of the various partnerships' statute of limitations issues in *Agri–Cal* as compared to the facts of the current case to assess whether the issues are completely the same. In tax cases, the requirement for collateral estoppel that there be an identity of issues is interpreted very narrowly. *See Hibernia,* 740 F.2d at 387. The issue must be identical *in all respects. Id.*

The Supreme Court addressed an analogous issue in *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). *Sunnen* addressed the collateral estoppel effect of a Board of Tax Appeals decision classifying royalties paid to a taxpayer's wife pursuant to a licensing agreement as taxable income to the taxpayer in a later Tax Court case involving royalties paid in subsequent tax years pursuant to a separate but identical licensing agreement. *Id.* at 596–97, 68 S.Ct. 715. The Supreme Court explained the applicable standard as follows:

> [W]here a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. And *if the very same facts and no others* are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change.

> But if the relevant facts in the two cases are separable, even though they may be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case.

*Sunnen,* 333 U.S. at 601, 68 S.Ct. 715 (citation omitted; emphasis added). The *Sunnen* Court found it "readily apparent" that collateral estoppel should not apply to royalty payments growing out of licensing contract that were not at issue in an earlier Board of Tax Appeals action "even though those contracts are identical in all important respects with the 1928 contract, the only one that was before the Board, and even though the issue as to those contracts is the same as that raised by the 1928 contract. For income tax purposes, what is decided as to one contract is not conclusive as to any other contract which is not then in issue, however similar or identical it may be." *Id.* at 602, 68 S.Ct. 715.

Here, the *Agri–Cal* case and current case involve different partnerships, different partnership returns, and different taxpayers. *Agri–Cal* involved seven partnerships, five of which argued that the FPAAs at issue were not timely because they were issued after the expiration of the § 6229(a) assessment period. 80 T.C.M. (CCH) at 296, 2000 WL 1211147. AVA was one of the five partnerships. As to AVA, the IRS successfully argued that no valid tax return was filed for the 1984 tax year because the return was not signed by a partner in conformity with 26 U.S.C. § 6063. *Id.* at 301, 2000 WL 1211147.

Although the material facts about the partnerships in *Agri–Cal* and TFA in the instant case are very similar, they are clearly separable. The involvement of different partnerships in the tax disputes here is analogous to the distinct but identical contracts involved in *Sunnen.* Also, Weiner's posture as a settling partner may

distinguish this case factually from the taxpayer partners in *Agri–Cal.* Thus, under *Sunnen's* reasoning, the issues presented here are not identical for purposes of collateral estoppel.[23]

■ *Was the Issue Fully And Vigorously Litigated?*—Weiner asserts that the FPAA limitations issue was not fully and vigorously litigated in the Tax Court. This argument is unavailing. Weiner's desire to raise new arguments that could have been but were not made before the Tax Court does not defeat the fully and vigorously litigated element of collateral estoppel. *See Yamaha Corp. v. United States,* 961 F.2d 245, 254 (D.C.Cir.1992) ("Once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case."). Plaintiff may not raise new arguments in the second litigation even if they were not made in the first; as long as the argument could have been made it is precluded. *Id.* (citing *Securities Indus. Ass'n v. Board of Governors,* 900 F.2d 360, 364 (D.C.Cir.1990), and RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. c (1982)).[24]

The Court cannot conclude that the identical issue before this Court was fully and vigorously litigated in the *Agri–Cal* Tax Court case.

*Was the Ruling on the Issue Necessary to Support the Judgment?*—Weiner contends that many of the arguments he raises here, even though presented to the *Agri–Cal* court, were not the basis for the Tax Court's decision in that case. This contention is without substance. The Tax Court's findings of fact and legal conclusions related to the validity of Voyer's signature on the AVA 1984 return are the basis for that court's ultimate ruling on the FPAA limitations issue. It is that ruling

---

**23.** But for the restrictive approach dictated by *Sunnen,* this Court likely would find that the issues are identical. Weiner has failed to show the existence of any genuine issues regarding material factual distinctions between the circumstances of Voyer's signing the TFA 1984 return and his signing the AVA 1984 return in issue in *Agri–Cal.* Indeed, Weiner's arguments regarding TFA largely repeat those asserted by the taxpayers and TMP for the AVA in the *Agri–Cal* litigation. As with TFA, the AVA 1984 return was signed by "Joseph A. Voyer, Treasurer." *Id.* AVA argued, as does Plaintiff here, that AMCOR was a partner in AVA at the time the 1984 return was signed; that AMCOR was authorized to sign the 1984 return as AVA's agent or because the partners in AVA ratified the return; that the 1984 return was in substantial compliance with the Internal Revenue Code; and that the IRS accepted the return and therefore should be estopped from attacking its validity. *Id.* at 301–03. Weiner makes the additional fact-based argument that TFA was not a legally formed partnership. It is not clear from the *Agri–Cal* opinion if the facts Weiner alleges regarding the defects in TFA's formation exist with respect to AVA, or if those facts were presented to the Tax Court. However, the

Court is unpersuaded that this contention is legally or factually viable. *See* discussion *infra* at 646–47.

**24.** The Court is unpersuaded by Weiner's contention that the criminal investigation of the TMP, which investigation ended in 1993, creates a conflict of interest that motivated the TMP not to fully litigate the FPAA limitations issue in the Tax Court. *See Phillips v. Comm'r of Internal Revenue,* 272 F.3d 1172, 1176 (9th Cir.2001) (criminal investigation does not necessarily disqualify TMP). This case is patently different from *Transpac Drilling Venture 1982–12 v. Comm'r of Internal Revenue,* 147 F.3d 221 (2nd Cir.1998), on which Weiner relies. Unlike *Transpac Drilling,* the criminal investigation of the TFA general partners ended without any charges being filed. The Stipulation and active litigation in *Agri–Cal* occurred long after the criminal investigation concluded as to the TMP of TFA. Even if Weiner were found to raise a fact issue as to the TMP's motivations or possible misdeeds, resolution of that question is not necessary to the Court's ruling on the collateral estoppel issue, which is based on the lack of identity of the issues.

to which the IRS seeks to bind Weiner and which must be necessary to the *Agri–Cal* judgment.

■ Weiner also argues that the Tax Court issued a Memorandum Opinion but did not issue a final judgment and thus the *Agri–Cal* rulings are not final for purposes of collateral estoppel. Weiner cites no authority for his position that the rulings were not sufficiently conclusive to support application of collateral estoppel, and the Court is unpersuaded. "For purposes of issue preclusion 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect. A decision need not be 'final' in the strict sense of 28 U.S.C. § 1291 in order to prevent the involved parties from relitigating contested issues. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Coleman v. Comm'r of Internal Revenue*, 16 F.3d 821, 830 (7th Cir.1994) (citations omitted)). Collateral estoppel relates to issue preclusion, not claim preclusion. The Tax Court's *Agri–Cal* ruling as to the validity of Voyer's signature was a decision on the merits. The fact that the *Agri–Cal* parties thereafter settled the case does not change the court's ruling. The Court sees no reason to require a formal final judgment before applying collateral estoppel.

***Do Special Circumstances Exist that Make Collateral Estoppel Unfair?***—Both parties have identified "fairness" as the fourth requirement for application of collateral estoppel. *See Winters*, 149 F.3d at 391. This element only applies when there is an offensive use of collateral estoppel.

*See In re Swate*, 99 F.3d 1282, 1290 (5th Cir.1996) (the requirement of fairness is a limitation on offensive collateral estoppel; offensive collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating issues that the defendant previously litigated and lost against another plaintiff). Neither party has established that this case presents an issue of *offensive* collateral estoppel. The IRS, which seeks to benefit from the doctrine, is defending against Weiner's affirmative claim for a refund based on his use offensively of the limitations bar. The Court nevertheless reaches this element in the collateral estoppel analysis because, in the bigger picture, it is the IRS that claims taxes due from Weiner.[25]

Weiner argues that special circumstances make application of collateral estoppel unfair in this case. Specifically, Weiner argues that fairness dictates that the decision of the Tax Court not be given collateral estoppel effect here because the Tax Court did not have jurisdiction over the statute of limitations issue as it pertains to him individually (because the issue is a nonpartnership item) and because his personal settlement prevented him from participating in or appealing the Tax Court's exercise of jurisdiction over the limitations issue in TFA Tax Court Case or *Agri–Cal.*

As to the effect of the settlement on Weiner's opportunities to litigate the issue in the partnership proceeding, Weiner's contentions are unpersuasive. Weiner argues that his settlement did not encompass the limitations question, and the Court has adopted that reasoning pursuant to *Alexander.* The settlement *per se* is therefore not a bar to Weiner's litigating the limita-

---

**25.** It could be argued that the posture of the parties here, while somewhat unnatural, should be binding on Weiner because the parties' designation is attributable to Weiner's own choice to pay the assessed taxes and proceed in a refund action in District Court, rather than contest the matters in Tax Court, with or without the other partners.

tions issue. Moreover, the Court has little sympathy for Weiner's claimed disenfranchisement. Weiner, knowing the TFA Tax Court Case was underway, elected to stay on the sidelines. He chose to settle his tax liability and now claims that he thereby eliminated his eligibility to participate actively in the Tax Court litigation involving TFA. Weiner should have to live with the consequences of his calculated business decisions.

As to the application of collateral estoppel where Weiner's FPAA limitations claim is a nonpartnership item, assuming the fairness element is relevant at all in this case, the Court concludes that Weiner's inability to participate in the prior litigation may be a "special circumstance."[26] However, because Weiner did not even attempt to participate in the Tax Court litigation knowing that other partners and the TMP were involved, and because Weiner now chooses to advance the philosophy that he was barred earlier, despite any evidence that either the Court or the parties to the Tax Court litigation believed him barred at the time, the Court deems this factor to be of little importance.

*Conclusion on Collateral Estoppel.*— The Court concludes under *Sunnen,* 333 U.S. at 601, 68 S.Ct. 715, that collateral estoppel does not preclude Weiner's refund claim because the facts giving rise to the decisions on the FPAA limitations issues in *Agri–Cal* are not identical in every respect to the facts presented by Weiner in the instant case. The Court therefore will consider the merits of the statute of limitations claim.

### 2. Was the 1984 Return Invalid?

 The TFA 1984 return was signed by "Joseph Voyer, Treasurer." Voyer was not at the time he signed the return, and never has been, a partner of

TFA. He was the Treasurer of AMCOR, the managing agent of TFA. The IRS contends that because the 1984 return was not signed by a partner, it was not a valid return under § 6063 and did not trigger the statute of limitations contained in § 6229(a). Section 6063 states:

> The return of a partnership made under section 6031 shall be signed by any one of the partners. The fact that a partner's name is signed to the return shall be prima facie evidence that such partner is authorized to sign the return on behalf of the partnership.

The IRC and case law provide no authority approving the substitution of the signature of an authorized agent who is not a partner on a partnership return. In general, signature requirements for returns have been strictly enforced. *See Burford Oil Co. v. Comm'r of Internal Revenue,* 153 F.2d 745, 746 (5th Cir.1946) (requirement that a corporate tax return must be sworn to by the president, vice president or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer, is mandatory; return signed only by treasurer is not valid); *Elliott v. Comm'r of Internal Revenue,* 113 T.C. 125, 128–29, 1999 WL 596946 (1999) (return that did not comply with signature requirements was not valid return and did not trigger running of limitations period for assessment). In at least one case, the Tax Court has strictly enforced the signature requirement of § 6063. *Agri–Cal,* 80 T.C.M. (CCH) at 303, 2000 WL 1211147 (finding that the AVA 1984 Form 1065 was not signed by a partner and, consequently, was not a valid partnership return).

Weiner makes several arguments to avoid this patent flaw in the TFA 1984 return. Each will be addressed below.

---

**26.** As noted *supra* note 12, in relation to the 1997 amendment of § 6226(d), the Tax Court has routinely exercised jurisdiction over statute of limitations issues.

 *Estoppel.*—Weiner contends that his settlement agreement with the IRS based on the IRS's acceptance of the TFA partnership return and issuance of the FPAA in reliance on it, estops the IRS from defensively attacking the return's validity. Weiner thus seeks to expand the reach of his settlement agreement by asserting that it prevents the IRS from asserting any defenses to an unsettled limitations issue. This position is inconsistent with his basic posture in this case that the settlement must be construed literally and narrowly, and thus does not preclude his refund claim based on the statute of limitations. *Alexander* permits Weiner to pursue his refund claim based on the FPAA limitations issue despite his settlement agreement. *See Alexander,* 44 F.3d at 332. The agreement clearly prevents the IRS from altering its position on the amount or nature of Plaintiff's tax liability. However, none of the terms of the settlement bar the IRS from defending itself from Weiner's attack.[27] The IRS makes no affirmative claim to collect more money from Weiner.[28] Nor does the IRS seek to relitigate the value of any partnership items related to TFA's 1984 return. Weiner's argument that his settlement agreement bars the IRS from asserting the invalidity of the 1984 return is rejected.[29]

*Invalid Partnership.*—Next, Weiner argues that TFA was not a validly formed partnership and thus the signature by a "partner" is not required. Weiner relies on § 6233 for the proposition that TEFRA, including its statute of limitations, applies to any entity that files a partnership return, even if the entity is not actually a partnership.[30] Because TFA was not really a partnership, Weiner reasons, the failure to satisfy the requirement that the entity's return be signed by a partner does not invalidate the TFA 1984 return, and that return should be deemed sufficient under federal law. Weiner's argument is misplaced.

The IRS does not argue that the TFA 1984 return is not governed by TEFRA; the IRS simply argues that the 1984 return did not include a valid signature. Weiner's argument does not demonstrate that Voyer's signature would suffice, even if TFA were not actually a validly formed partnership. While Weiner cites various cases for its contention that TEFRA applies to any entity that files a partnership return, *see* Plaintiff's Response, at 17 n.38, he cites no case that holds that the signa-

---

27. Moreover, it would be grossly unfair to prevent the IRS from asserting the validity of the return in defense of Weiner's limitations issue when the signature validity question is only put in issue as to Weiner because of Weiner's refund claim.

28. Weiner paid the full assessment and now seeks a refund, *i.e.,* to reduce his tax liability.

29. The signature requirement of § 6063, which is the keystone of the IRS's argument, is contained in subtitle F of the IRC, not subtitle A. Under Weiner's own theory, the signature requirement would not be a partnership item. This provision demonstrates the lack of logic in the literal construction of TEFRA as to "partnership item" excluding the FPAA limitations issue.

30. Section 6233 provides:

(a) **General rule.**—If a partnership return is filed by an entity for a taxable year but it is determined that the entity is not a partnership for such year, then, to the extent provided in regulations, the provisions of this subchapter are hereby extended in respect of such year to such entity and its items and to persons holding an interest in such entity.

(b) **Similar rules in certain cases.**—If a partnership return is filed for any taxable year but it is determined that there is no entity for such taxable year, to the extent provided in regulations, rules similar to the rules of subsection (a) shall apply.

ture requirement of § 6063 is inapplicable in such a situation. Whether or not TFA was defectively formed, there is no evidence that Voyer, the Treasurer of AMCOR, or AMCOR itself was in a position comparable to a partner in TFA in 1984 or when the 1984 return was filed. Thus, Weiner's argument is unavailing to justify Voyer's signature on the TFA 1984 return.

■ In any event, § 6233 comes into play only if the entity filing a partnership return is not really a partnership. Weiner has not demonstrated that TFA in fact was not a true partnership under state law. Weiner contends that the partnership was not validly formed because he signed only a subscription agreement and an assumption agreement, not the actual partnership agreement, and because the partnership agreement was not signed by or on behalf of the limited partners. This argument is faulty. The California Uniform Limited Partnership Act, CAL. CORP. CODE §§ 15501–15531, governs formation of limited partnerships in California. That Act contains no requirement that a limited partnership agreement must be executed by all partners in order for the partnership to be validly formed. Moreover, Weiner accepted the benefits of partner status, held himself out to others as a partner, participated as a partner in TFA, and settled with the IRS as a TFA partner.

***Improper Return Cases: Germantown and Beard.***—Weiner cites the cases *Germantown Trust Co. v. Comm'r of Internal Revenue*, 309 U.S. 304, 307, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and *Beard v. Comm'r of Internal Revenue*, 82 T.C. 766, 774, 1984 WL 15573 (1984), in support of his position that Voyer's signature was sufficient to make the TFA 1984 return a valid return for limitations purposes. These cases are inapposite. In *Germantown*, the Supreme Court held that when a corporation files an incomplete return in good faith, the return constitutes a return within the meaning of

§ 275(a) of the IRC of 1932, setting a two-year limitations period for a tax assessment. 309 U.S. at 307, 60 S.Ct. 566. The return contained all of the information necessary to compute the corporate tax, but failed to actually compute an amount due to the government. The Court rejected the IRS's contention that the faulty return was "no return" for purposes of determining the applicable limitations period for assessing taxes. *Id.* at 309, 60 S.Ct. 566. However, *Germantown* did not involve an unsigned or defectively signed return and did not address the mandatory directive in § 6063.

Weiner's reliance on *Beard* also lacks merit. In *Beard*, the Tax Court addressed whether a tampered Treasury Form 1040 was a return at all. If the filed document was not a return under applicable law, then an addition to tax for failure to file a tax return was warranted. *Beard*, 82 T.C. at 774, 1984 WL 15573. The *Beard* court recognized the statutory grant of authority to the Treasury to require that returns be made according to the forms and regulations prescribed by the Secretary of the Treasury, which regulations require use of the proper official form. *Id.* at 775, 1984 WL 15573. Further, the court considered by analogy cases determining whether a document is sufficient for purposes of triggering the statute of limitations. *Id.* at 777, 1984 WL 15573. The *Beard* opinion articulates the following test for determining whether a document is sufficient for statute of limitations purposes: (1) there must be sufficient data to calculate tax liability; (2) the document must purport to be a return; (3) there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) the *taxpayer* must execute the return under penalties of perjury. *Id.* Weiner's arguments overlook the fourth element of the *Beard* test. Since Voyer was not a partner of TFA, he was not an authorized

signatory for the "taxpayer." None of the cases cited in *Beard,* or by Weiner, on this point hold a return sufficient that was signed by someone other than one of the taxpayers for whom the return was filed.[31] Voyer was not a partner in TFA. Nor was AMCOR, the entity for which Voyer was an officer and agent, a partner. The TFA 1984 return thus was not signed by the taxpayer, as expressly required by the *Beard* test.

*Improper Signature Case: Miller.*— Weiner recognizes that a return that lacks a valid signature is not a return under § 6063.[32] Weiner contends that a faulty signature is not the same as no signature, citing *Miller v. Comm'r of Internal Revenue,* 237 F.2d 830, 836 (5th Cir.1956). In *Miller,* the Fifth Circuit upheld the validity of an individual taxpayer's return signed in that taxpayer's name by his wife, at his specific request, in the presence of, and at the place designated by, the accountant who prepared it. *Id.* The court of appeals rejected the proposition that the omission of the taxpayer's signature made the filing "no return at all." *Id.* At issue in *Miller* was the taxpayer's compliance with § 51(a) of the 1939 IRC and certain Treasury Reg-

---

**31.** *See Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 180, 55 S.Ct. 127, 79 L.Ed. 264 (1934) (a return made inaccurate by supervening changes in the law is not a nullity); *Dowell v. Comm'r of Internal Revenue,* 614 F.2d 1263, 1267 (10th Cir.1980) (although generally unsigned returns do not commence statute of limitations, acceptance of return by IRS for purposes of fraud case against taxpayers triggered statute), *holding rejected by Evans Cooperage Co. v. United States,* 712 F.2d 199, 204 (5th Cir.1983); *Badaracco v. Comm'r of Internal Revenue,* 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (a fraudulent return is not a "nullity" for statute of limitations purposes; a subsequent, nonfraudulent, amended return does not trigger the limitations period because § 6501(a) plainly refers to the original return); *Atlantic Land & Improv. Co. v. United States,* 790 F.2d 853, 860 (11th Cir.1986) (FICA return filed by employer did not trigger statute of limitations on employer's RRTA tax liability because the FICA return did not include all the information necessary to compute the RRTA tax); *United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029, 1034 (6th Cir.1999) (return filed after IRS assessment not sufficient to defeat prohibition against discharge for taxes for which chapter 7 debtor did not file a return); *In re Hatton,* 220 F.3d 1057, 1061 (9th Cir.2000) (substitute return by IRS and installment agreement by debtor failed to qualify as a return under *Beard,* thus debtor's tax liability was not dischargeable in bankruptcy); *Heim v. Comm'r of Internal Revenue,* 251 F.2d 44, 45 (8th Cir.1958) (there can be a valid joint return even if one spouse failed to sign return); *Sharwell v. Comm'r of Internal*

*Revenue,* 419 F.2d 1057, 1059 (6th Cir.1969) (signature of wife is only one factor is determining whether a return is joint); *Sente Invest. Club Partnership v. Comm'r of Internal Revenue,* 55 T.C.M. (CCH) 1565, 1567, 1988 WL 83532 (1988) (court held designated "managing partner" who signed return was not legally partner entitled to file petition to challenge FPAA; validity of return was not at issue.); *Appeal of Mabel Elevator Co.,* 2 B.T.A. 517, 519 (1925) (return based on fiscal instead of calendar year was sufficient to start limitations period).

Weiner also has cited two cases of dubious precedential value. The holding in *Colmer–Green Lumber Co. v. Comm'r of Internal Revenue,* 12 B.T.A. 256, 263 (1928) that the return at issue was sufficient to trigger the statute of limitations was reversed by *Lucas v. Colmer–Green Lumber Co.,* 49 F.2d 234, 235 (5th Cir.1931). Weiner also cites *Indiana Rolling Mills Co. v. Comm'r of Internal Revenue,* 13 B.T.A. 1141, 1144 (1928), which holds that the statute providing that a corporate return "shall" be sworn to by certain officers is not mandatory. *Indiana Rolling Mills* is directly contrary to the later decision in *Burford Oil Co. v. Comm'r of Internal Revenue,* 153 F.2d 745, 746 (5th Cir.1946), cited by the IRS, which holds that the requirement that a return shall be sworn to by certain corporate officers is set forth in the IRC in mandatory language and failure to comply therewith condemns the return. Thus, Weiner's reliance on these authorities is unavailing.

**32.** *See* Plaintiff's Response, at 19 (citing *Reaves v. Comm'r of Internal Revenue,* 295 F.2d 336, 338 (5th Cir.1961)).

ulations regarding the verification of a return and signing of an individual return by an agent. *Id.* at 836–37. *Miller* does not support Weiner's position. The *Miller* court expressly distinguished *Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829 (1930), because the corporate taxpayer in *Lucas* was required to comply with a statutory directive that returns were to be sworn to by specified corporate officers. An analogous distinction separates *Miller* from the instant case. The individual taxpayer in *Miller* was not a partnership governed by § 6063. Section 6063 is expressly excepted from the statutory grant of authority to the Secretary to issue regulations governing the manner of signing returns. 26 U.S.C. § 6061 ("Except as otherwise provided by ... 6063, any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary."). Thus, there is no statutory or regulatory authority allowing a partnership return to be signed by an agent. Moreover, the 1984 return was signed by "Joseph Voyer, Treasurer" without any indication that Voyer was signing on behalf of, with the permission of, or in the name of, any partner of TFA. The TFA return was not signed by a partner of TFA and thus did not contain a valid signature of the partnership.

*Substantial Compliance.*—Weiner further contends that the 1984 return was valid under the doctrine of substantial compliance because AMCOR, as managing agent for TFA, served, in effect, as TFA's general partner. Weiner bases his argument on *Commissioner of Internal Revenue v. Tower,* contending that "a partnership is generally said to be created when persons join together their money, goods,

labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." 327 U.S. 280, 286, 66 S.Ct. 532, 90 L.Ed. 670 (1946). The Court is unpersuaded that this general rule assists the determination of the issues pertaining to the sophisticated public limited partnership involved in the case at bar. In *Tower,* the IRS challenged the existence of a husband-wife partnership. The Supreme Court stressed that transactions between a husband and wife designed to reduce family taxes should always be subjected to special scrutiny. *Id.* at 291, 66 S.Ct. 532; *see also Commissioner of Internal Revenue v. Culbertson,* 337 U.S. 733, 741, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949) (considering the "family partnership problem"). The concerns that necessitated special scrutiny of a family partnership are not present for the TFA partnership. The IRS does not challenge the existence of TFA as a partnership.[33] The issue here is merely whether the 1984 return was signed by a "partner." Weiner provides no authority suggesting that the general principle set forth in *Tower* should be used to transform AMCOR, an entity explicitly designated as an agent of the partnership (or Voyer, AMCOR's Treasurer) into a "partner." TFA was formed through extensive and sophisticated documentation. AMCOR, the sponsor of TFA, established itself as a "managing agent," not a "partner." There is no basis to hold that Voyer is an implied partner of TFA.

■ Section 6063 contains the express requirement that a partnership return be signed by a partner. There is nothing in the statute that invites the loose construction Weiner advocates to permit a partnership return to be signed by the partnership's managing agent. The Court agrees

---

**33.** In fact, it is only Weiner, the partner and taxpayer, who challenges the validity of the partnership, after unsuccessfully seeking to benefit from his partner status.

with the analysis of the Tax Court in *Agri-Cal*, 80 T.C.M. (CCH) at 303. Weiner's various arguments invite uncertainty where Congress was clear and unambiguous. The tax laws are to be strictly construed. Weiner's contentions regarding substantial compliance with the partnership tax return signature requirement are rejected.

*AMCOR as an Implicit Partner.*— Weiner next argues that AMCOR was in fact a partner at the time the 1984 return was signed. Weiner supports this contention with the proposition that federal law, not state law, governs the determination of the identity of TFA's partners for tax purposes. *Baker v. Comm'r of Internal Revenue*, 74 T.C.M. (CCH) 744, 747, 1997 WL 595347 (1997); *Alhouse v. Comm'r of Internal Revenue*, 62 T.C.M. (CCH) 1678, 1680, 1991 WL 276050 (1991). In making this determination, Weiner requests that the Court determine the parties' subjective intent based on their objective acts, citing *Baker*, 74 T.C.M. (CCH) at 747, 1997 WL 595347, and weigh numerous factors in making its determination, citing *Alhouse*, 62 T.C.M. (CCH) at 1680, 1991 WL 276050. Under *Alhouse*, the relevant factors include, among others, the written agreement of the parties, the contributions of each party to the venture, control over partnership income and capital, sharing a proprietary interest in profits, and sharing an obligation for losses. *Id.* No single factor is determinative. *Id.*

The Court concludes that there is no legal basis for Weiner's approach of looking behind the parties' contract and contemporaneous writings to ascertain who are partners of TFA. Further, the Court is unpersuaded that Weiner's approach would provide the result he advocates.

Both *Alhouse* and *Baker* are cases in which there was no partnership agreement. State law partnership formalities were not met. The taxpayers denied the existence of any partnership. These cases are therefore wholly inapposite. Here, in contrast, the TFA partnership was created in writing, and Weiner, for the purposes of this line of attack, does not dispute the partnership existence. Instead, Weiner asks the Court to deem an entity not designated as a partner in any partnership documents to be a partner for IRC purposes. This approach is rejected. As noted above, there is no legal justification for the Court to create a rule that requires scrutiny and weighing of complex, fact-intensive issues when the documents creating the partnership are crystal clear about each participant's status. Where AMCOR, the sponsor, intended to designate participants as "partners," it did so. By contract, AMCOR designed and adopted a non-partner role for itself. Weiner was apprised of his own, Voyer's, and AMCOR's respective roles. Weiner will not now be allowed to disclaim the legal effects of the partnership structure he endorsed by his investment in TFA and by his filing of tax returns claiming partner deductions.

In addition, AMCOR's conduct on its own and TFA's behalf clearly demonstrates that AMCOR was not a partner in TFA in 1984 or at the time the 1984 return was signed.[34] AMCOR is referred to as the "managing agent" in all partnership documents. AMCOR did not share in profits and losses; it was paid a fee for its management services .[35] There is no dispute that in December 1985, AMCOR purchased a partnership interest in TFA. The December 1985 letter agreement initiating this partnership interest is written in the

---

34. The IRS has not articulated an alternative approach here. The Court conducts the analysis proposed by Weiner.

35. AMCOR was paid an "incentive share" of profits after 1986 for its services, but the tax year in issue here is 1984.

present tense, indicating that AMCOR's agreement to buy, and the existing partners' agreement to sell partnership interests, was effective when the letter was executed.[36] Nothing about the letter indicates the parties intended to memorialize a past event or agreement. TFA did not file an amended Certificate of Limited Partnership identifying AMCOR as a partner until December 1985.[37] All of these actions and events establish that AMCOR was not in fact a partner in TFA on January 30, 1985 when Voyer signed the 1984 return as "Treasurer." [38]

As a corollary, Weiner contends that federal law, and specifically § 6063, does not mandate that a partnership return be signed by individuals deemed to be partners under state law. This argument is without substance. The Court has determined that, under Weiner's proposed federal law analysis, discussed elsewhere in this Opinion, neither Voyer nor AMCOR was a TFA partner at the time the TFA 1984 return was filed.[39]

***Conclusion on Validity of the 1984 Return.***—The Court concludes that the IRS has met its summary judgment burden to show that TFA's 1984 return was not signed by a partner as required by the IRC and thus did not trigger the statute of limitations for an assessment contained in 26 U.S.C. § 6229(a). The IRS's 1984 Cross–Motion will be granted and Weiner's 1984 Motion will be denied.

### E. *Weiner's 1985 Statute of Limitations Claim*

Weiner was a limited partner in Emperor Seedless and Indio Date during the 1985 tax year. Emperor Seedless and Indio Date timely filed their 1985 partner-

---

36. *See* Appendix to IRS's 1984 Cross–Motion, Exhibit 2.

37. Weiner's sole evidence of AMCOR's status as an alleged partner in 1984, as opposed to the partnership's managing agent as designated in all the contemporaneous documents, is that TFA filed a partnership return signed by Voyer, and that AMCOR performed the functions of a general partner with management duties and authority. This self-serving contention is circular, without legal authority, and is rejected.

38. Weiner further argues that even if he has not proven as a matter of law for his own summary judgment motion that AMCOR and Voyer were partners for the tax year 1984, the IRS has failed to meet its summary judgment burden on its cross-motion to prove that AMCOR and Voyer were *not* partners for 1984. The Court disagrees. Voyer signed the TFA 1984 return as "Treasurer," not partner. Weiner has provided no evidence or argument to suggest that there is a genuine fact issue concerning Voyer's non-partner status. In response to the IRS's 1984 Cross–Motion, Weiner points to alleged failures by the IRS to meet its discovery obligations. This argument fails. The facts relied upon by the Court in reaching its decision are undisputed matters of record. There is no basis for delaying a ruling on the Government's motion under Federal Rule of Civil Procedure 56(f) on the 1984 limitations issues. Weiner fails to identify any potential discovery that is likely to reveal facts to create a genuine and material fact issue. Weiner relies on the argument that the IRS did not produce a complete 1984 partnership return with all attachments. Even if the evidence would show that TFA sent AMCOR and Voyer a 1984 Schedule K–1, there is no authority that such an act is significant as to AMCOR's or Voyer's partnership status in light of the substantial documentation that neither were partners in 1984 or when the 1984 return was signed.

39. Weiner argues in his Reply that despite the express language of § 6063, that section really does not require the signature of a partner at all. In support of this argument, Weiner points out that Treasury Regulations provide that a 1065 partnership return for a limited liability company may be signed by the general partner or any member. Any relevance Weiner's argument may have for limited liability companies under specific regulations governing those entities does not extend to the issue of the validity of a partnership return for a limited partnership such as TFA.

ship returns in January 1986. The three-year period within which the IRS was to issue an FPAA expired on April 15, 1989, unless there was a valid extension of the limitations period. The IRS did not issue the FPAAs for Emperor Seedless and Indio Date for the 1985 tax year until April 10, 1991. The IRS contends that the TMP for Emperor Seedless and Indio Date consented to extensions of the period for issuing an FPAA by executing valid Form 872–P Consents to Extend Time for Assessing Tax Attributable to Items of a Partnership ("Forms 872–P") by letter dated September 30, 1988 (the "September letter").

Weiner seeks summary judgment on his 1985 refund claim on the grounds that the Forms 872–P produced by the IRS are invalid because they are not signed by a validly designated TMP. Weiner contends that the September letter relied upon by the IRS, as well as similar letters dated June 16, 1988 and July 14, 1988 purporting to designate Schreiber the TMP for Indio Date and Emperor Seedless, does not comply with mandatory Treasury Regulations governing the method for designating a TMP.[40]

As with the TFA 1984 return, the IRS first asserts that the *Agri–Cal* decision collaterally stops Weiner from asserting a statute of limitations defense for the 1985 returns in issue. The IRS also contends on the merits of the pending limitations issue a properly designated TMP for each partnership executed a valid Form 872–P and thereby extended to April 30, 1991, the time to issue the pertinent FPAAs.

### 1. Collateral Estoppel

The elements of collateral estoppel are set out in detail above in section III.D.1 and will not be repeated here. Like TFA, Emperor Seedless and Indio Date were not parties to the *Agri–Cal* case. Emperor Seedless and Indio Date did raise the statute of limitations issue in their respective Tax Court partnership cases. Also like TFA, the TMP of Emperor Seedless and Indio Date entered Stipulations with the IRS in December 1999, whereby he agreed that the "outcome of the statute of limitations issue present in this Partnership Case will be determined in a manner consistent with the Court's findings of fact and law on the statute of limitations issue present in the [*Agri–Cal* case]."

For the same reasons discussed as to the 1984 TFA return, the IRS has failed to establish that the issues here are identical in all respects to those in the *Agri–Cal* case. Because different partnerships are at issue here from those in *Agri–Cal,* the Court finds that *Sunnen* directs against application of collateral estoppel. *See* 333 U.S. at 599–600, 68 S.Ct. 715; *Hibernia,* 740 F.2d at 387. The Court therefore addresses the merits of the parties' summary judgment arguments on the timeliness of the FPAAs for Emperor Seedless and Indio Date for the 1985 tax year.

### 2. The Merits as to the 1985 Returns

■ *Compliance With Treasury Regulations Through the September Letter.*—The September letter designated Schreiber as the TMP for Indio Date and Emperor Seedless for tax year 1985. Weiner contends that the September letter

---

**40.** The IRS relies only on the September letter, not the prior June and July letters. Weiner apparently was not aware of the September letter until he received the IRS's 1985 Cross-Motion, and addressed only the prior letters in his original motion. In his Reply, Weiner asserts that the September letter was also invalid. Because the IRS is not relying on the attempted designations in June and July 1988, the Court will address only the September letter.

does not comply with treasury regulations governing the exclusive method for designation of a tax matters partner. Temporary Treasury Regulation § 301.6231(a)(7)–1T(e) (1987), in effect at the time of the 1988 designation, provided:

> The partnership may designate a tax matters partner for a partnership taxable year at any time after the filing of a partnership return for that taxable year by filing a statement with the service center with which the partnership return was filed. The statement shall -
>
> (1) Identify the partnership and the designated partner by name, address, and taxpayer identification number;
>
> (2) Specify the partnership taxable year to which the designation relates;
>
> (3) Declare that it is a designation of a tax matters partner for the taxable year specified; and
>
> (4) Be signed by persons who were general partners at the close of the year and were shown on the return for that year to hold more than 50 percent of the aggregate interest in partnership profits held by all general partners as of the close of that taxable year. . . .

Weiner attacks the September letter's designation of Schreiber as TMP for Emperor Seedless and Indio Date on the grounds that it does not list the address of the partnerships, and was not filed with the service center where the partnership returns were filed.[41]

The address listed on the September letter matches the address for the partnerships. Thus, the designation does, in effect, identify the partnership by the correct address.[42] Weiner's contention on this point fails.

It is undisputed that the September letter was not filed with the IRS service center in Fresno, California, where the 1985 partnership returns were filed. Instead, Schreiber handed the letter to an IRS agent involved in the 1988 audit of AMCOR and its affiliated partnerships during a meeting at the offices of AMCOR.[43] Neither the IRS nor Schreiber should be faulted for Schreiber's following directions he received directly from an IRS agent directly involved in review of the partnership returns. Weiner has cited no authority invalidating a partnership's designation of its TMP under similar circumstances. The purpose of Treasury Regulation § 301.6231(a)(7)–1T is to ensure that TMP designations are received by an IRS agent with authority over the returns in issue. Schreiber's handing the designation to Gaither, at her request, at AMCOR's offices fully satisfied this goal.[44]

Because the September letter was effective to designate Schreiber as TMP for tax year 1985, the Court will address whether the Forms 872–P executed by Schreiber

---

**41.** As discussed *infra* in the next subsection, Weiner also contends that the TMP designation and the Forms 872–P were signed at a time when Schreiber was acting under an unwaivable conflict of interest.

**42.** The letter also contained the correct partnership name and taxpayer identification number.

**43.** *See* Affidavit of Debbie Gaither, Exhibit 4 to IRS's Supplemental Reply Brief.

**44.** Although the Court declines to give it collateral estoppel effect, the *Agri–Cal* decision is well-reasoned on this point. The September letter at issue in this case is the same letter addressed in *Agri–Cal* in relation to the partnership Agri–Venture Fund. Affidavit of Debbie Gaither, Exhibit 4 to IRS's Supplemental Reply Brief. The *Agri–Cal* court found that the September designation substantially complied with the filing requirement of Treasury Regulation § 301.6231(a)(7)–1T(e) when it was received in hand by Gaither, the IRS's agent. *Agri–Cal,* 80 T .C.M. (C.C.H.) at 305–06.

for Indio Date were effective to extend the time period for assessment of partnership taxes against Weiner for the 1985 tax year.

■ *Schreiber's Conflict of Interest.*—Weiner contends that there is need for further factual development before the Court rules on whether the FPAA statute of limitations expired prior to the assessments for the 1985 Emperor Seedless and Indio Date returns. Weiner primarily contends that the IRS's criminal investigation of Schreiber created a conflict of interest that disqualified Schreiber as TMP, thereby making the September designation letter and the Forms 872–P for these partnerships ineffective.[45] The IRS briefly addresses this point in its Supplemental Reply Brief, arguing that Weiner has no evidence to support his conflict of interest assertion because Behrens testified that the partners did not know about the criminal investigation at the time they signed the letters at issue.[46] Weiner contends that his decision to defer briefing on these matters is in accordance with the parties' agreement not to include this aspect of the issue in their pending motions for partial summary judgment. There is insufficient legal argument for the Court to ascertain if there is a genuine fact issue as to Schreiber's alleged conflict of interest as of September 1988. The Court cannot ascertain with any definiteness the date the criminal investigation commenced, the time Schreiber learned of the criminal or other IRS investigation, the reason Schreiber executed the Form 872–P, or the date the investigations of Schreiber ended. *See Phillips v. Comm'r of Internal Revenue*, 272 F.3d 1172, 1176 (9th Cir. 2001) (criminal investigation does not necessarily disqualify TMP); *Transpac Drilling Venture 1982–12 v. Comm'r of Internal Revenue*, 147 F.3d 221 (2d Cir.1998). Therefore, the Court concludes that Weiner's 1985 Motion and the IRS's 1985 Cross–Motion will be denied without prejudice to reconsideration upon further legal and factual clarification.

## F. *Weiner's § 6621 Interest Claim*

■ *Parties' Contentions.*—Weiner has moved for summary judgment with respect to his claim for a refund of substantial interest for tax years 1984, 1985, and 1986 that the IRS has imposed pursuant to 26 U.S.C. § 6621(c), which applies to "tax motivated" transactions. The IRS has also moved for summary judgment on this claim. The version of § 6621(c) applicable in this case authorized the IRS to assess interest at 120% of the ordinary interest rate established by § 6601 on any substantial underpayment attributable to a tax motivated transaction.[47] The definition of "tax motivated transaction" includes sham or fraudulent transactions. The IRS's assessment is presumed to be correct, and Weiner has the burden to prove otherwise. *Melton v. Teachers Ins. & Annuity Ass'n of America*, 114 F.3d 557, 560 (5th Cir. 1997).

Weiner contends that he did not agree to pay this substantial interest as part of his settlement agreements, and he has not conceded any facts that support a determination that his underpayment of taxes was

---

**45.** It is unclear if Weiner contends that there are also other areas requiring factual development.

**46.** *See* Oral Deposition of Fred Behrens, Exhibit 5 IRS's Supplemental Reply Brief, at 88–89.

**47.** The provision at issue was originally enacted as part of the Tax Reform Act of 1984 as § 6621(d). It was amended by the Tax Reform Act of 1986 and redesignated as § 6621(c). It was repealed in 1989 for returns due after December 31, 1989. The original purpose of § 6621(d) was to encourage settlement of tax shelter cases. H.R. Rep. 98–861, at 985 (1984), 1984 U.S.C.C.A.N. 2140.

attributable to a tax motivated transaction. Moreover, Weiner contends that this Court lacks jurisdiction to make a determination that the underpayment was attributable to a tax motivated transaction because such a determination involves partnership items.

The IRS contends that the assessment of § 6621(c) interest was part of Weiner's settlement agreements, or alternatively, the IRS contends that fact questions regarding the meaning of the settlement preclude summary judgment for Weiner.

***Analysis of Parties' Settlement Agreement.***—As stated above in the Court's discussion of the statute of limitations, the settlement agreement is governed by the general rules of contract law. *Alexander,* 44 F.3d at 331; *Treaty Pines Invest. Partnership,* 967 F.2d at 211. Thus, the intent of the parties must be gleaned from the four corners of their settlement documents. There is no mention of § 6621(c) interest in the Form 870–P(AD) and accompanying Schedule of Adjustments for any of the years or partnerships at issue in this case. The IRS nevertheless argues that the Summary of the AMCOR Appeals Settlement Offer ("SAASO"), which expressly states that § 6621(c) interest will be assessed as part of the settlement, is incorporated into and a part of the settlement agreement. The IRS contends that the SAASO was attached to the Form 870–P(AD) sent to Weiner. Weiner denies receiving the SAASO, but argues that even if he did receive it, the SAASO is not a part of the settlement agreement and cannot be used to alter, modify, or add to the terms of the settlement agreement contained in the Form 870–P(AD).[48] The IRS takes the positions that the settlement included,

and Weiner agreed to, this interest as a result of the SAASO. These contentions are belied by the bold statement across the bottom of the SAASO that "THIS IS NOT PART OF THE APPEALS SETTLEMENT OFFER." The record demonstrates that Weiner was aware of the IRS's intent to assess § 6621(c) interest. This awareness was evidenced by the statement in the cover letter from Weiner's CPA that accompanied his executed Forms 870–P(AD) that "we understand that the IRC § 6621(c) interest penalty will be assessed." That awareness, however, does not constitute an agreement by Weiner not to contest the applicability of such interest. The settlement agreement, the Form 870–P(AD) and accompanying schedule of adjustments, as well as Weiner's ultimate payment of all the IRS claimed, are not concessions by Weiner that he agreed to the IRS's claim of entitlement to § 6621(c) interest.

The Court concludes, nevertheless, that Weiner is not entitled to summary judgment on his claim for a refund of § 6621(c) interest. Weiner's request for summary judgment goes too far. Weiner essentially argues that the settlement agreement binds the IRS, but not him. Weiner contends that § 6621(c) interest was not part of the settlement agreement, but at the same time contends that § 6621(c) interest is not owing as a matter of law because the IRS did not secure a concession that Weiner's underpayment was attributable to a tax motivated transaction in the settlement agreements. Weiner obliquely relies on *Todd v. Comm'r of Internal Revenue,* 862 F.2d 540 (5th Cir.1988), and *McCrary v. Comm'r of Internal Revenue,* 92 T.C. 827, 1989 WL 35568 (1989), in support of his

---

48. The IRS submitted the Declaration of Jerry Gossett in support of its position that the SAASOs were included in the settlement packages. Exhibit 7 to United States' Supplemental Reply Brief. Weiner has objected to the Declaration on the grounds of hearsay, speculation, and opinion, and lack of foundation. Plaintiff's Objection to Declaration of Jerry Gossett [Doc. # 59]. Given the Court's determination that the SAASO's were not part of the settlement agreements, Plaintiff's Objection [Doc. # 59] is **overruled as moot.**

position that the IRS cannot assess interest on a ground not expressly stated in the settlement agreement. Neither *Todd* nor *McCrary* prevent the IRS from seeking interest pursuant to § 6621(c) in this case.

*Todd* involved interest assessed against a taxpayer pursuant to § 6659,[49] which imposed an addition to tax in the case of an underpayment of taxes due to a valuation overstatement. In *Todd*, the Tax Court ultimately refused to allow the IRS's claim of § 6659 interest, even though the Court upheld the IRS's disallowance of a depreciation deduction related to refrigerated food containers designed to preserve perishable food during shipment. 862 F.2d at 541. The deductions were disallowed because the food containers were never put into service, not because of the taxpayer's overvaluation of the containers. Tax Court held that the taxpayer's underpayment was not "attributable to" an overvaluation. *Id.* at 541–42. Because the IRS was only entitled to § 6659 interest in the event the tax underpayment was due to an overvaluation, the Tax Court ruled that the taxpayers were entitled to a refund of interest. The Fifth Circuit affirmed the decision of the Tax Court. *Id.* at 542–45.

In *McCrary*, a taxpayer claimed deductions for losses related to rental payments on a master recording and an investment credit related to the fair market value of the master recording. *McCrary,* 92 T.C. at 839. Shortly before trial, the taxpayer conceded that the investment credit did not apply to the transaction at issue in order to avoid disallowance of the credit by the IRS on grounds that would constitute a tax-motivated transaction as specified in § 6621(c). *Id.* at 851. The Tax Court nevertheless held that the taxpayers were

not entitled to the deductions originally claimed, but that no part of the underpayment of the taxpayer's taxes was attributable to a valuation overstatement and that therefore the taxpayers were not liable for additions to tax under § 6659. *Id.* at 855.

 Weiner's case is distinguishable from both *Todd* and *McCrary.* In those two cases, the tax underpayments were found to be attributable to a circumstance other than overvaluation, the only factor that would support an addition to tax pursuant to § 6659. In this case, the IRS contends that the underpayment is attributable to a sham transaction. The IRS's contention is not contrary to its settlement agreement or any findings by the Tax Court. Therefore, the settlement agreement does not preclude the IRS from seeking a ruling from this Court affirming its assessment of § 6621(c) interest if supported by the facts.

*Jurisdiction Over § 6621(c) Issues.—*
Weiner argues that this Court lacks jurisdiction to determine whether Weiner's underpayments were attributable to tax motivated transactions. Weiner concedes that § 6621(c) interest is an affected item, not a partnership item.[50] *NCF Energy Partners v. Comm'r of Internal Revenue,* 89 T.C. 741, 743, 1987 WL 45298 (1987). The determination of an affected item, such as § 6621(c) interest, requires factual determinations that must be made individually at the partner level. *Id.* at 744. Indeed, the characterization of § 6621(c) interest as a nonpartnership item forms a large part of Weiner's argument that such interest was not included in his settlement agreement, which by its express terms, settled only partnership items. Weiner nevertheless contends that the Court lacks jurisdiction to determine the applicability

---

**49.** Section 6659 was repealed in 1989, at the same time § 6621 was amended.

**50.** The IRC defines an "affected item" as "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5).

of § 6621(c) interest based on a finding that the underlying transaction is a sham. The "sham transaction" determination under Weiner's analysis requires two distinct findings: (1) the taxpayer's lack of profit motive, *and* (2) the partnership's lack of economic substance.[51] While Weiner concedes that lack of profit motive is clearly a nonpartnership item, Weiner argues that lack of economic substance is a partnership item because it entails a determination of the bona fides of reported partnership income and/or loss, matters covered by subtitle A of the IRC.[52]

 This argument is not persuasive. First, the Fifth Circuit has not yet adopted the view that both lack of profit motive and lack of economic substance are necessary to find a sham transaction. *See Compaq Computer Corp. v. Comm'r of Internal Revenue*, 277 F.3d 778, 781–82 (5th Cir. 2001). Second, a determination that the transactions lack economic substance does not necessarily require re-opening partnership items. The IRS is not attempting to relitigate specific deductions or any other entry on the returns. The IRS is bound by the express terms of the settlement agreement. A review of Fifth Circuit authority addressing the assessment of § 6621(c) interest indicates that the controlling factor in such a determination is the intent of the taxpayer. *See Durrett*, 71

F.3d at 517; *Chamberlain*, 66 F.3d at 732; *Lukens*, 945 F.2d at 99–100; *Heasley*, 902 F.2d at 386. Under Weiner's own theory, any determination regarding § 6621(c) interest is necessarily partner-specific because it requires, at a minimum, a finding that a specific partner lacked a profit motive. Thus, whether or not Weiner is entitled to a refund of interest assessed under § 6621(c) is appropriate for litigation at the partner level.

The parties have presented no evidence on the merits of Weiner's lack of profit motive (or the economic substance of the partnership transactions). Thus, Weiner's § 6621(c) refund claim cannot be resolved at this time and both his § 6621 Motion and the IRS's § 6621 Motion must be denied.

### G. The IRS's § 6404 Motion

 The IRS contends that this Court lacks subject matter jurisdiction to determine Weiner's claim for abatement of interest under 26 U.S.C. § 6404. The IRS may abate deficiency interest under certain circumstances. *Id.* Under the version of § 6404 applicable to the tax years in issue in this case, interest could be abated if the deficiency resulted from errors or delays caused in whole or in part by IRS employees in the performance of ministerial tasks.[53]

---

**51.** Weiner cites the Fifth Circuit cases *Durrett v. Comm'r of Internal Revenue*, 71 F.3d 515 (5th Cir.1996), *Chamberlain v. Comm'r of Internal Revenue*, 66 F.3d 729, 732 (5th Cir. 1995), *Lukens v. Comm'r of Internal Revenue*, 945 F.2d 92, 99 (5th Cir.1991), and *Heasley v. Comm'r of Internal Revenue*, 902 F.2d 380, 383 (5th Cir.1990), in support of his approach. Although the cases discuss the characteristics of sham transactions, none held that the determination of whether a partnership was a sham transaction is a partnership item.

**52.** Weiner cites *Randell v. United States*, 64 F.3d 101 (2d Cir.1995), and *Hambrose Leas-*

*ing v. Comm'r of Internal Revenue*, 99 T.C. 298, 1992 WL 210580 (1992), for this proposition. These cases held that District Courts lack jurisdiction to determine partnership income and liabilities. This general proposition is not dispositive of the Court's jurisdiction over § 6621(c) issues which do not require reconsideration of such partnership items.

**53.** Section 6404(e)(1), prior to 1996 amendments, read in relevant part:

(e) Assessments of interest attributable to errors and delays by Internal Revenue Service. -
(1) In general.—In the case of any assessment of interest on -

Courts prior to 1996 consistently held that the Secretary's decision whether to abate interest under that statute was discretionary and beyond the review of the district courts. *See Argabright v. United States,* 35 F.3d 472, 476 (9th Cir.1994); *Selman v. United States,* 941 F.2d 1060, 1063–64 (10th Cir.1991); *Horton Homes, Inc. v. United States,* 936 F.2d 548, 554 (11th Cir.1991). The plaintiffs in *Argabright* sought a refund of penalty interest for a period of delay in receiving proper settlement documentation from the IRS.[54] The *Argabright* court noted that although the Administrative Procedure Act ("APA") provides generally for judicial review of agency actions, § 701 of the APA bars a court from exercising its jurisdiction if precluded by statute or if the agency action is committed to agency discretion by law. *Argabright,* 35 F.3d at 475; 5 U.S.C. § 701(a). Relying on prior decisions of the Tenth and Eleventh Circuits, the *Argabright* court concluded "that § 6404(e)(1) leaves courts without any basis for distinguishing between the instances in which abatement should and should not be grant-

ed. Lacking judicially manageable standards ... for judging how and when the agency should exercise its discretion, we hold that judicial review is not available for agency action taken pursuant to 26 U.S.C. § 6404(e)(1)." *Id.* at 476 (internal citations omitted).[55]

In *Selman,* the Tenth Circuit looked to the language, structure, and legislative history of the provision and determined that Congress intended to commit the abatement of interest to the agency's discretion. In denying review, the *Selman* Court stated "although the statute authorizes the Secretary to abate interest attributable to certain IRS errors or delays, it neither indicates that such authority should be used universally nor provides any basis for distinguishing between the instances in which abatement should and should not be granted." 941 F.2d at 1063. Moreover, the court noted that the "statute clearly speaks in permissive, not mandatory language." *Id.* at 1064.[56]

Recognizing these authorities, Weiner argues that a waiver of sovereign immuni-

---

(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, ... the Secretary may abate the assessment of all of any part of such interest for any period.

**54.** In *Argabright,* the IRS settled in February, 1988, a Tax Court proceeding brought by certain investors in a tax shelter known as Wilpon. *Argabright,* 35 F.3d at 473. Despite direction from the Tax Court that the IRS should offer investors that did not participate in the 1988 proceeding the same settlement, the IRS did not provide settlement documentation to such investors until 1991, and then not on the same terms as the February 1988 settlement. *Id.* The Wilpon investors who settled in 1991 were the plaintiffs in *Argabright.*

**55.** The *Argabright* Court also relied on *Horton Homes, Inc. v. United States,* 936 F.2d 548 (11th Cir.1991). In *Horton Homes,* the Elev-

enth Circuit employed a similar analysis, citing legislative history expressing Congress's intent that the proposed provision "gives the IRS the authority to abate interest but does not mandate that it do so." 936 F.2d at 551; *see also Bax v. C.I.R.,* 13 F.3d 54, 58 (2d Cir.1993) ("[W]e note substantial authority for the view that interest abatement under Section 6404(e)(1) is a discretionary form of relief within the sole authority of the Commissioner and is thereby beyond the scope of judicial review.").

**56.** The *Argabright* court also agreed with the reasoning in *Selman* that § 6404(e)(1) provided only that the agency *"may* abate" increases in interest assessments due to delays caused by IRS personnel, whereas a closely related provision, § 6404(e)(2), dealing with erroneous refunds, provided that "[t]he Secretary *shall* abate the assessment of interest," and thus Congress revealed its intent to make § 6404(e)(1) abatements discretionary rather than mandatory. 35 F.3d at 475.

ty was enacted by Congress in 1996, when § 6404(e)(1) was amended by the Taxpayer Bill of Rights 2 ("TBOR2"), to provide in relevant part:

> In the case of any assessment of interest on-
>
> > (A) any deficiency attributable in whole or in part to any *unreasonable* error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or *managerial* act
> >
> > \* \* \* \* \* \*
>
> the Secretary may abate the assessment of all or any part of such interest for any period.

(emphasis added).[57] The amendment added the italicized words "unreasonable" to modify "error or delay" and expanded coverage to IRS "managerial" (in addition to ministerial) acts. *See* TBOR2, Pub.L. No. 104–168, § 301, 110 Stat. 1452 (1996). Weiner also relies on § 6404(i)(1), added by Congress at the same time:

> The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

26 U.S.C. § 6404(i)(1). This amendment applies to requests for abatement submitted to the IRS after July 30, 1996, regardless of the tax year to which the abatement request pertains. *See* TBOR2, Pub.L. No. 104–168, § 302(b), 110 Stat. 1452 (1996).

Weiner contends that these amendments to § 6404 abrogate the *Argabright* line of cases, make abatement decisions reviewable by the District Court in a refund action, do not evidence Congressional intent to give the Tax Court exclusive jurisdiction over § 6404 matters, and provide the "abuse of discretion" standard of review for District Courts' review of these IRS decisions. The IRS responds that the waiver of sovereign immunity in the 1996 amendment to § 6404 was expressly limited to the Tax Court, and contends that the *Argabright* rule still governs to preclude District Court review.[58] The Court concludes that the IRS has the better side of this jurisdictional argument.

The United States, as sovereign, is immune from suit unless it waives that immunity. *United States v. Dalm*, 494 U.S. 596, 609, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *see also United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) ("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."); *PALA, Inc. Employees Profit Sharing Plan and Trust Agreement v. United States*, 234 F.3d 873, 876 n. 7 (5th Cir.2000); *Webb v. United States*, 66 F.3d 691, 693 (4th Cir. 1995). Jurisdiction is conferred on district courts by 28 U.S.C. § 1346 to handle actions to recover "any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws," including interest. 28 U.S.C. § 1346; *see Horton Homes, Inc.*, 936 F.2d at 550. The general jurisdictional grant in § 1346(a)(1) must be read to incorporate other statutory requirements. *Dalm*, 494 U.S. at 601–02, 110 S.Ct. 1361; *see also*

---

**57.** These amendments became effective for tax years after the date of enactment, *i.e.*, 1996. *See* TBOR2, Pub.L. No. 104–168, § 301(c), 110 Stat. 1452 (1996).

**58.** The Court does not reach the IRS's other non-jurisdictional arguments.

*United States v. Forma,* 42 F.3d 759, 763 (2d Cir.1994) ("statutory provisions and court interpretations have placed a number of conditions on the explicit waiver of sovereign immunity instituted through 28 U.S.C. § 1346(a)(1)").[59] Waivers of sovereign immunity should be "construed strictly in favor of the sovereign, and not enlarge[d] ... beyond what the [statutory] language requires." *See Webb v. United States,* 66 F.3d 691, 693 (4th Cir.1995) (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (addressing the statute of limitations in tax refund suits) (citations and internal quotations omitted); *see also Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) ("although we should not construe such a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would 'extend the waiver beyond that which Congress intended'" (quoting *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979))); *United States v. Neary (In re Armstrong),* 206 F.3d 465, 473 (5th Cir. 2000) (citing *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967) (finding waiver of sovereign immunity as to counterclaims where the government has instituted an action, but not extending to relief exceeding in amount or different in kind to that claimed by the government)).

Weiner focuses his first argument on Congress's addition of the word "reasonable" to § 6404 to describe the type of IRS error or delay that is reviewable. Weiner contends that the word "reasonable" implies a standard by which the Court can review the Secretary's decision, thus addressing appellate courts' concerns under the APA that § 6404 contained no standard by which to measure the IRS's exercise of discretion. This argument lacks merit. Substantively, the addition of the word "reasonable" is, at best, a general indication of the types of error or delays that a taxpayer may challenge, not a reference to the standard of the courts' review. However, even more significantly, this amendment applies only to interest accrued with respect to deficiencies or payments for taxable years beginning after July 30, 1996. TBOR2, Pub.L. 104–168, § 301(c) (1996); *see* Historical and Statutory Notes to 26 U.S.C. § 6404. Thus, the new reasonableness standard does not apply to the IRS's abatement decision in this case, which involves the tax years 1984–86, and cannot serve as a basis for District Court jurisdiction under § 6404.[60]

Weiner next argues that any finding that the Tax Court has exclusive jurisdiction to review abatement decisions ignores the well-established Internal Revenue Code scheme providing the Tax Court with jurisdiction for taxpayers' pre-payment claims and District Court jurisdiction for post-payment (*i.e.,* refund) claims. Weiner's argument ignores Congress's expressed intention in amending the statute. The legislative history of § 6404(i) includes a committee report providing:

*Present Law*

Federal courts generally do not have jurisdiction to review the IRS's failure to abate interest.

---

**59.** For instance, § 7422(a) provides that no suit for a tax refund may be maintained unless "a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." *Forma,* 42 F.3d at 763 n. 7. Section 6511, in turn, constitutes one of these "provisions of law" governing refund claims that must be complied with in order to find that the conditions of Congress's broad consent to suit contained in § 1346(a)(1) are met. *Id.* at 763 n. 8.

**60.** Moreover, the amendments did not alter the permissive language of the statute granting the IRS discretion as to when to waive interest.

*Reasons for change*

The Committee believes it is appropriate for the Tax Court to have jurisdiction to review IRS's failure to abate interest with respect to certain taxpayers.

*Explanation of Provision*

The bill grants the Tax Court jurisdiction to determine whether the IRS's failure to abate interest for an eligible taxpayer was an abuse of discretion. The Tax Court may order an abatement of interest. The action must be brought within 180 days after the date of mailing of the Secretary's final determination not to abate interest. An eligible taxpayer must meet the net worth and size requirements imposed with respect to awards of attorney's fees. No inference is intended as to whether under present law any court has jurisdiction to review IRS's failure to abate interest.

H.R. REP. No.104–506, at 28 (1996), 1996 U.S.C.C.A.N. 1143, 1151. Weiner argues that Congressional refusal to express an opinion as to whether the prior statute was subject to judicial review indicates an intention to abrogate the *Argabright* line of cases. Weiner posits that if Congress believed judicial review was precluded under the prior statute, it would have said so expressly. Weiner seems to ignore Congress's comment in its summary of *"Present Law"* in the House Report that "[f]ederal courts generally do not have jurisdiction to review the IRS's failure to abate interest." Weiner also ignores the

"Reasons for change" in which the Committee referred solely to the Tax Court in its explanation of the grant of jurisdiction. Further, Congress, by its statutory language in § 6404(i)(1), expressly granted the Tax Court jurisdiction to review such decisions. Nothing in the amended § 6404 or its legislative history indicates Congressional intent to allow District Courts to review abatement decisions, under the abuse of discretion or any other standard.[61] The Court concludes that Congress did not intend *sub silentio* to alter longstanding precedent on District Court jurisdiction.[62]

Although no courts of appeals have wrestled with the 1996 amendments to § 6404 with respect to the authority of the District Courts, every District Court that has addressed the issue has declined to review abatement decisions. *See Davies v. United States*, 124 F.Supp.2d 717, 721 (D.Me.2000) ("While it is true that Congress, in enacting section 6404(i), made abatement decisions reviewable by the Tax Court pursuant to an abuse-of-discretion standard, there is no indication that Congress intended that this standard be exported to the district courts. If anything, the legislative history indicates the opposite: that Congress believed and intended that the *Argabright* line of cases would be untouched."); *Henderson v. United States*, 95 F.Supp.2d 995, 1004 (E.D.Wis.2000) (district court lacked jurisdiction because Section 6404(i) grants jurisdiction specifically to the Tax Court); *Beall v. United*

---

**61.** Aware of the need to set standards for the Tax Court in its review of the Secretary's discretionary decision, Congress also incorporated in that section an "abuse of discretion" standard. Congress thus clearly expressed its intent that IRS determinations regarding interest that results from IRS ministerial errors or delays are no longer committed to absolute agency discretion, as under pre-TBOR2 law.

**62.** Weiner's last ditch effort is a contention that the House Report's concluding comment that "[n]o inference is intended as to whether under present law any court has jurisdiction to review IRS's failure to abate interest" means that Congress believed that judicial review was not previously barred. The Court does not agree. The quoted sentence does not imply one way or another what Congress thought the scope of a District Court's jurisdiction was.

*States,* 170 F.Supp.2d 709, 712 (E.D.Tex. 2001) ("6404(i)'s sole reference to the "Tax Court" leads to the inevitable conclusion that Congress expected that the federal district courts would continue to follow the *Argabright* line of cases, and, therefore, would not undertake judicial review of IRS interest abatement decisions.").

The Court concludes that the 1996 amendments to § 6404 do not authorize District Courts' review of § 6404 abatement decisions. There is no reason Congress would do through the web of inferences and exported standards proposed by Weiner what Congress easily could have done expressly. Thus, the IRS's decision not to abate interest pursuant to § 6404(e)(1) is beyond the jurisdiction of this Court, and the IRS's § 6404 Motion will be granted. Weiner's claims for abatement of interest pursuant to 26 U.S.C. § 6404 for the tax years 1984, 1985, and 1986 must be dismissed with prejudice.

## IV. *CONCLUSION*

For the reasons set forth above, the Court concludes that it has jurisdiction to address Weiner's statute of limitations contentions, but lacks jurisdiction over his challenge to the IRS's denial of abatement of interest under § 6404. The Court concludes that collateral estoppel does not preclude Weiner's litigation of the timeliness of the FPAAs on the TFA partnership return for tax year 1984 and the Emperor Seedless and Indio Date returns for tax year 1985.

The Court further concludes, on the merits of the parties' limitations arguments, that the assessment against Weiner for the TFA partnership for tax year 1984 is not time-barred. The TFA 1984 tax return was not signed by a partner as required by § 6063. Thus, the filing of that return did not commence the three year limitations period for issuance of the FPAA.

The Court also concludes that the record is insufficient to determine if summary judgment is warranted for either party on the limitations issues regarding the Emperor Seedless and Indio Date 1985 returns. The parties are invited to submit more detailed legal and factual arguments, if appropriate on this issue, as indicated in this Opinion.

Finally, the Court concludes that summary judgment is not appropriate for either party on the issue of whether Weiner's investment in the TFA partnership was a sham transaction and whether penalty interest should apply under § 6621(c). It is therefore,

**ORDERED** that Weiner's Motion for Partial Summary Judgment Based on Statute of Limitations for 1984 [Doc. # 21] is **DENIED**. It is further

**ORDERED** that the United States' Cross–Motion for Partial Summary Judgment Based on Statute of Limitations for 1984 [Doc. # 27] is **GRANTED**. It is further

**ORDERED** that Weiner's claim for a tax refund for the 1984 tax year on the grounds that the IRS's FPAA for that year was untimely is **DISMISSED with prejudice**. It is further

**ORDERED** that Weiner's Motion for Partial Summary Judgment Regarding 1985 Statute of Limitations Claim [Doc. # 19] is **DENIED**. It is further

**ORDERED** that the United States' Cross–Motion Regarding 1985 Statute of Limitations Claim [Doc. # 29] is **DENIED**. It is further

·**ORDERED** that Weiner's Motion for Partial Summary Judgment with Respect to his § 6621(c) Related Claims [Doc. # 22] is **DENIED**. It is further

**ORDERED** that the United States' Motion for Partial Summary Judgment Based on Settlement Agreement [Doc. # 48] is **DENIED**.

**ORDERED** that the United States' Motion for Partial Dismissal of Plaintiff's Complaint [Doc. # 16] is **GRANTED**. It is further

**ORDERED** that Weiner's claim for abatement of interest pursuant to 26 U.S.C. § 6404 is **DISMISSED with prejudice**.